Argued April 6, affirmed May 9, 1916.

# SEASIDE *v.* OREGON SURETY & CASUALTY CO.

(157 Pac. 150.)

**Principal and Surety—Actions on Bonds—Limitation.**

1. Under an indemnity policy requiring immediate notice of acts of the employee probably involving loss, claim for loss immediately after discovery of loss, and any action within six months after presentation of claim, where the company was advised by telegram of suicide of employee, and later advised by letter of amount of loss, the six months began to run from the date of the letter, not the telegram.

**Principal and Surety—Indemnity—Embezzlement—"Fraud."**

2. In suit against a surety company on bond of city treasurer, who, the complaint charges, embezzled and stole city money, it is error to give the instruction, "Fraud is not pleaded by the plaintiff, and therefore you must disregard the same in the trial of this case," since fraud and dishonesty are synonymous terms.

Principal and Surety—Bonds—Larceny or Embezzlement.

3. Under Section 1957, L. O. L., as to conversion of public moneys, the burden is upon an officer to account for such money in his care, and if he fails to do so, the *animus furandi* is inferable, and his acts are covered by a bond against his larceny or embezzlement.

[As to acts for which sureties on bond of public officers are liable, see note in 91 Am. St. Rep. 497.]

From Multnomah: Robert G. Morrow, Judge.

Department 1. Statement by Mr. Justice Benson.

This is an action by the City of Seaside against the Oregon Surety & Casualty Company, a corporation. The complaint contains recitals of the corporate capacity of plaintiff and defendant, and certain charter enactments of Seaside, including a section reading thus:

"Sec. 19. The treasurer shall receive and disburse all moneys coming into his hands. He shall pay no moneys, orders, warrants or bonds until the same shall have been ordered paid by the council and a warrant therefor signed by the mayor or acting mayor and attested by the recorder and police judge issued. He shall give a bond to the town of Seaside in the sum of $15,000.00 with a reliable surety company as surety to be approved by the mayor, the premium for which shall be paid by the town, and he shall receive such salary as the council shall prescribe by ordinance."

This is followed by an allegation that one E. N. Henninger from the first Monday in January, 1910, until his death on November 4, 1910, was the elected, qualified and acting treasurer of Seaside; that he was required to give to plaintiff a surety bond in the sum of $15,000, conditioned for the faithful performance of his duties as such officer, and for the faithful and honest accounting for and payment by him to plaintiff, and his successor in office, of all moneys coming into his hands or possession by virtue of his office; that

on March 9, 1910, in compliance with such require-
ment and the city charter, said Henninger and the
Union Guarantee Association executed and delivered
to plaintiff such a bond, which is set out in full. The
provisions of the bond which are pertinent to the
consideration of this appeal are quoted herein later.
The complaint then recites a transfer of the liability
of this surety company to the defendant; that after
the execution of the bond, and while Henninger was
such treasurer, he received of the moneys of the plain-
tiff the sum of $18,466.06, "and accounted for and paid
over only the sum of $10,516.97, and wrongfully and
unlawfully embezzled and failed to account for, and
failed to pay over to plaintiff, or the successor in office
of said E. N. Henninger, the full sum of $7,949.09,
which said sum of money the said E. N. Henninger,
as such treasurer, wrongfully and unlawfully stole and
embezzled." It is alleged that Henninger died on
November 4, 1910; that immediately thereafter Frank
S. Godfrey was appointed city treasurer to fill the
vacancy; that Henninger left no property whatever,
and that he did not account for or pay over to the
plaintiff or to his successor any part of the $7,949.09,
but embezzled and stole all of it; that immediately
upon the death of Henninger, and on the same day,
plaintiff in writing notified the defendant of the death
of Henninger and also that he had embezzled the
moneys of plaintiff; that the amount thereof was not
then known, but that as soon as plaintiff could ascer-
tain the amount of the shortage it would give defend-
ant due notice; that immediately after plaintiff
ascertained the amount thereof, and on January 19,
1911, plaintiff notified defendant in writing that Hen-
ninger had embezzled the sum of $7,949.09, and
demanded payment thereof from defendant; and
that defendant refused to pay and denied the liability.

Defendant filed an answer, which, after admitting the corporate capacity of the parties and that Henninger was city treasurer from March 9, 1910, until his death, the assumption by defendant of the obligations of the Union Guarantee Association, and the execution of the bond, admits that on November 5, 1910, plaintiff notified defendant in writing of the death of Henninger and that he had embezzled the city funds. Then follows a general denial of the other allegations of the complaint, and three affirmative defenses, in the first of which the following paragraph of the bond is set out:

"The association shall be notified in writing, addressed to the president of the association at its office in the City of Portland, State of Oregon, of any act of omission or of commission on the part of the employee which may involve a loss for which the association is responsible hereunder, immediately after the occurrence of such act shall come to the knowledge of the employer; that any claim made in respect to the bond shall be in writing, addressed to the president of the association, as aforesaid, immediately after the discovery of any loss for which the association is responsible hereunder."

It is then alleged that on January 19, 1911, plaintiff delivered to defendant the following instrument:

"Seaside, Oregon, January 19, 1911.

"To the President, Gay Lombard, President of Union Guarantee Association, or President of Oregon Surety & Casualty Company, Office of said Association, Portland, Oregon.

"Sir: You are hereby notified, and through you as its president notice is hereby given to the Union Guarantee Association, that Edmund N. Henninger, as treasurer of the town of Seaside, Oregon, who committed suicide on or about the 4th day of November, A. D. 1910, was at and prior to his death an embezzler

of funds of said town of Seaside to the amount, and in the sum of seven thousand nine hundred and forty-nine and 9/100 dollars ($7,949.09), which has not been repaid or made good to said town, and for which said town holds you, as his surety, responsible.

"TOWN OF SEASIDE.

"[Signed]   By F. H. LAIGHTON,
"Acting Mayor and President of Council.
"Attest: R. O. RALSTON,
"Auditor and Police Judge.   [Seal.]"

This is followed by the allegation that this notice fails to comply with the condition of the contract, in that plaintiff knew of all of the acts of omission and commission of Henninger on the fourth day of November, 1910, or shortly thereafter, but failed to give this notice until the date thereof, "and failed and neglected to bring this action in the time provided in this bond."

The second affirmative defense sets out the following paragraphs of the contract:

"Now, therefore, in consideration of the sum of one hundred five and 00/100 dollars, paid as a premium for the period from March 9, 1910, to March 9, 1912, at 12 o'clock noon, and upon the faith of the said statement as aforesaid by the employer, which the employer hereby warrants to be true, it is hereby agreed and declared that, subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the association shall, within three months next after notice, accompanied by satisfactory proof of a loss as hereinafter mentioned, has been given to the association, make good and reimburse to the employer all and any pecuniary loss sustained by the employer of money, securities or other personal property in possession of the employee, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said employee in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement,

and which shall have been committed during the continuance of this bond, or any renewal thereof, and discovered during said continuance, or within six months thereafter, or within six months from the death or dismissal, or retirement of the employee from the service of the said employer: Provided, always, that said association shall not be liable, by virtue of this bond, for any mere error of judgment or injudicious exercise of discretion on the part of said employee, in and about all or any matters wherein he shall have been vested with discretion, either by instruction or rules and regulations of the said employer. And it is expressly understood and agreed that the said association shall in no way be held liable hereunder to make good any loss that may accrue to the said employer by reason of any act, or thing done, or left undone, by said employee, in obedience to, or in pursuance of any discretion, instruction or authorization conveyed to and received by him from said employer, or its duly authorized officer in its behalf. * *

"It being the true intent and meaning of this bond that the association shall be responsible only as aforesaid, for moneys, securities or property diverted from the employer through fraud or dishonesty, amounting to larceny or embezzlement as aforesaid on the part of the employee within the period specified in this bond, while in the discharge of the duties of the office or position to which he has been elected or appointed."

Then follows the allegation that the money was not lost through any fraud or dishonesty amounting to larceny or embezzlement of the treasurer, and that he did not steal or embezzle the same.

The third affirmative defense sets out the following paragraph of the bond:

"No suit or action of any kind against the association for the recovery of any claim upon, under or by virtue of this bond shall be sustainable in any court of law or equity, unless such suit or action shall be

commenced and the process served on the association within the term of six months next after the presentation of such claim, and in case any suit or action shall be commenced against the association after the expiration of the said period of six months, the lapse of time shall be deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced.''

It is then recited that Henninger committed suicide on the fourth day of November, 1910, and on that day plaintiff notified defendant of such suicide, and that he had embezzled the city's money, and that thereafter this action was begun, but not until more than six months had elapsed after the giving of such notice.

The reply insists that plaintiff presented its claim to defendant in accordance with the provisions of the contract as soon as they could discover with the aid of an expert accountant the amount of the defalcation. There is also an estoppel pleaded in the reply, which it is unnecessary to set out herein. The issues having been joined, a trial was had resulting in a verdict for defendant. Thereafter a motion was interposed by plaintiff for a new trial, which was granted, and from this order defendant appeals.   AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Beckett, Mr. F. C. Howell* and *Mr. Frank Spittle,* with oral arguments by *Mr. Ralph W. Wilbur* and *Mr. Howell.*

For respondent there was a brief and an oral argument by *Mr. Clyde G. Fulton.*

MR. JUSTICE BENSON delivered the opinion of the court.

The briefs and the oral argument herein go much further afield than we regard as necessary in our con-

sideration of the issues involved. The one question to be determined is: Did the court err in granting a new trial? If there was any error upon the trial which would be ground for reversal, the order must be affirmed. It was stipulated at the trial that on November 4, 1910, and after the death of Henninger, the defendant received from the plaintiff the follow-- ing telegram:

"Seaside, Oregon, Nov. 4, 1910.
"Union Guarantee Association, Portland, Oregon:
    "E. N. Henninger, town treasurer, bonded by your company has committed suicide.
"F. H. LAIGHTON,
"Acting Mayor.
"R. O. RALSTON,
"Auditor and Police Judge."

This stipulation also concedes that on January 19, 1911, plaintiff mailed to defendant, who received it on the same day, the following:

"Seaside, Oregon, January 19, 1911.
"To the President, Gay Lombard, President of the Union Guarantee Association, or President of Oregon Surety & Casualty Company. Office of Said Association, Portland, Oregon.
    "Sir: You are hereby notified, and through you as its president notice is hereby given to the Union Guarantee Association, that Edmund N. Henninger, as treasurer of the town of Seaside, Oregon, who committed suicide on or about the 4th day of November, A. D. 1910, was at and prior to his death an embezzler of funds of said town of Seaside to the amount and in the sum of seven thousand nine hundred and forty-nine and 9/100 dollars ($7,949.09), which has not been repaid or made good to said town, and for which said town holds you, as his surety, responsible.
"TOWN OF SEASIDE.
"[Signed]    By F. H. LAIGHTON,
"Acting Mayor and President of Council.
"Attest: R. O. RALSTON,
"Auditor and Police Judge."

At the outset it will be observed that the contract provides for notice to the surety of any act of the treasurer "which may involve a loss for which the association is responsible hereunder, immediately after the occurrence of such act shall come to the knowledge of the employer." There is also a provision to the effect that any *claim* for loss shall be *presented* in writing immediately upon discovery thereof, and that no action thereon shall be prosecuted unless begun within six months after such *presentation of claim*.

1. It appears to us that both the attorneys and the trial court have confused these two provisions. The telegram above quoted clearly fulfills the first requirement and the letter of January 19th is the only presentation of a claim mentioned in the evidence. It is undisputed that the claim was presented on January 19th, and the action begun with process served upon defendant on July 17th, which is clearly within the six months limited by the contract. The only question, therefore, which might have been properly submitted to the jury upon this phase of the case is as to whether or not the time elapsing between November 4, 1910, and January 19, 1911, was a reasonable compliance with the requirement that the claim should be presented immediately upon the discovery of a loss, which question was not submitted to the jury at all.

2, 3. Again, we note that the court gave this instruction to the jury:

"I instruct you that fraud is not pleaded in this case by the plaintiff and therefore you must disregard the same in the trial of this case."

There is no theory upon which this instruction is proper. The complaint distinctly charges that the treasurer embezzled and stole the money. If such

acts do not constitute fraud, it would be difficult to frame such a plea. It has been frequently held that fraud and dishonesty are synonymous terms: 2 Words and Phrases (2d Series), 641, and cases there cited. For the reasons mentioned, the judgment must be affirmed; but it was urged upon us at the argument that in the event of a new trial this court should express its view as to whether the larceny defined in Section 1957, L. O. L., is covered by the language of the bond in question. As we read this statute, it provides that when a public officer receives public moneys, the burden is upon such officer to pay the money to the party entitled thereto or to so account for it as to free his own skirts of dishonesty. Failing to do this, the *animus furandi* is a legitimate inference.

The judgment is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.