Argued January 21, affirmed February 9, rehearing denied March 9, 1915.

## SCHADE v. MULLER.

(146 Pac. 144.)

**Mechanics' Liens—Indemnity by Partner—Effect—Estoppel to Claim Lien.**

1. A partnership is not barred from claiming a mechanic's lien on a building merely because one partner, in his individual capacity, was surety on the contractor's bond, and had guaranteed the delivery of the building free of liens.

**Contracts—Implied Contract—Evidence.**

2. Where a building contractor, for whom one of the partners of a plumbing firm was surety, abandoned his contract, and the owner told the partner to go ahead and finish the plumbing, that he would pay all the bills and look to the sureties, a promise by the owner to pay the contract price for the plumbing might be implied.

**Mechanics' Liens—Persons Entitled—Contractor's Surety.**

3. The surety on a contractor's bond, who guaranteed the delivery of the building free from liens, cannot enforce a merchanic's lien or recover for labor or materials furnished and used in excess of the contract price.

[As to who is "laborer" within the statute giving liens to laborers, see note in Ann. Cas. 1913B, 138.]

75 Or.—15

Partnership—Rights Against Third Persons—Representation by Partner—Suretyship.

4. Where a member of a plumbing firm individually signed the bond of a contractor for a certain building, for which the firm was to furnish the plumbing, and there was nothing in the record to show that he did so on account of or for the benefit of the partnership, it will be presumed that he was acting in his individual capacity.

Contracts—Consideration—Waiver of Lien.

5. Where the principal contractor for a building abandoned his contract, the waiving by a subcontractor for the plumbing, of his right to file a lien, was sufficient consideration to support a promise by the owner to pay for the plumbing.

    [As to waiver of mechanics' lien, see note in 41 Am. Dec. 221.]

Contracts—Actions—Findings—Express Contract.

6. In an action on an express promise by the owner of a building to pay a subcontractor the contract price for the plumbing, a finding that the owner promised to pay the subcontractor a certain sum, which was the original contract price, and was also the reasonable value of the work and material furnished, is sufficient to support a judgment for the subcontractor; the latter part of the finding being immaterial.

Contracts—Work and Labor—Actions—Variance—Recovery on Implied Contract.

7. In an action on an express contract, there can be no recovery upon proof of an implied agreement; but under a complaint for the reasonable value of services, where there is evidence showing an agreed price, that price will be construed to be the reasonable value.

Interest—Express Contracts—Computation.

8. Where the owner of a building promised to pay to subcontractors for the plumbing the original contract price for the completion of the work, the plumbers are entitled to interest from the date of its completion.

Interest—Implied Contracts—Computation.

9. Even if the promise was not to pay the contract price, a statement by the owner, when the bill was presented to him at the completion of the work, that it was all right, was a settlement of the amount due, and entitled the plumber to interest from that time.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

This is an action by Henry Schade, Herman Schade and Hugh Ryan, partners, engaged in the plumbing business as Schade Bros. & Co., against John Muller, to recover money.   The facts are that on October 1,

1909, a contract was made by the defendant with C. Alton, who, for the sum of $2,940, undertook to supply all the material and furnish the labor necessary to complete a house for him. Herman Schade, one of the plaintiffs, and P. F. Hall, as sureties, joined Alton in executing to Muller a bond for the faithful performance of the terms of the agreement and to indemnify him against any liens that might be filed against his property, or any claims or demands in regard thereto. Alton sublet the plumbing of the building to the plaintiffs, who agreed to furnish the material and perform the labor for this part of the work for $449.92. Before the house was completed, and after Alton had received on account thereof $2,250, he abandoned the contract and left the state. Thereupon Muller notified the sureties on the bond to complete the structure according to the terms of the agreement, and was requested by them to have the house finished in conformity with the original plans and specifications, and they would repay him any sum of money which he might necessarily expend in excess of the balance due under the contract. Complying with such solicitation, the defendant finished the building at an expense of $690 more than the agreed price, which sum included all bills for labor and material, except the cost of plumbing. The sureties, upon a request therefor, neglected to repay any part of that sum, whereupon Muller commenced an action against them for the recovery thereof. A settlement was finally made, however, whereby each surety paid him $300, and the action was dismissed. Thereafter this action was instituted to recover $449.92, the contract price of the plumbing. The complaint herein states the facts, in substance, as hereinbefore given, and avers, in effect, that before Alton abandoned the contract the plain-

tiffs, pursuant to their agreement with him, furnished material and performed labor for "roughing in" plumbing on the house of the reasonable value of $217.22; that the plaintiffs notified Muller thereof and informed him of their contract with Alton and of their intention to file a lien as security, whereupon he requested them to finish their part of the work, promising to pay them therefor the stipulated price, and agreeing to look to the sureties on the bond for reimbursement; that the plaintiffs accepted the proposition and, relying on his promise to pay them the sum of $449.92, they finished the work, but he refused to pay any part of that sum. The defendant interposed a plea in abatement, detailing the facts as given herein, and alleging that the plaintiff Herman Schade performed all the work and furnished all the material required for the plumbing, pursuant to the terms of the contract with the firm of which he is a member, and in conformity with his obligations as surety on the bond; and that the defendant had made no agreement with the plaintiffs for labor or material, except as thus stated. The prayer is that the action be dismissed. This plea having been denied, an answer was filed stating that such special defense was not waived, and denying the material averment of the complaint. For a further defense the facts are restated, and it is alleged, in effect, that the plumbing was done by the plaintiffs pursuant to their contract with Alton and under instructions from Herman Schade; and that the defendant had made no contract with them for labor to be performed upon or material to be used in his house, except as herein stated, and that the bond mentioned remained in full force and effect. The reply put in issue the allegation of new matter in the answer, and, the cause having been tried without the intervention of a jury, the

court made findings of fact and of law in conformity with the averments of the complaint and, based thereon, gave judgment for the plaintiffs in the sum demanded, and the defendant appeals.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Francis D. Chamberlain.*

For respondents there was a brief over the name of *Messrs. Lewis & Lewis,* with an oral argument by *Mr. Arthur H. Lewis.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is contended that the copartnership of Schade Bros. & Co., cannot legally enforce against the defendant any claim or demand for labor employed or material used in the construction of his house, because Herman Schade, a member of that firm as one of the sureties on the bond, stipulated to indemnify the defendant against any claim or demand that might be made or asserted against him; and, this being so, an error was committed in rendering the judgment herein. The answer does not aver that Herman Schade became surety on the bond on account or for the benefit of the partnership or with the knowledge or assent of the other members of the firm. A partnership is not barred from asserting a claim of lien on a building for materials furnished by the firm, merely because one of the partners, solely in his individual capacity, was a surety on the contractor's bond and had guaranteed the delivery of the building free of liens: *Burnett* v. *Glas,* 154 Cal. 249 (97 Pac. 423). "While a contract," says a text-writer, "made or a transaction entered into by one partner, without the scope of the firm's busi-

ness and without the consent of his copartner, does not bind his firm, yet he himself may be bound thereby": 30 Cyc. 531. To the same effect, see, also, 22 Am. & Eng. Ency. Law (2 ed.), 144. The defendant cannot set off against the plaintiff's demand any claim he may have against a member of the firm on the bond for indemnity: *McDonald* v. *MacKenzie*, 24 Or. 573 (14 Pac. 866). The defendant's remedy against Herman Schade and P. F. Hall for any alleged breach of the conditions of their bond must be found in another action: *Burnett* v. *Glas*, 154 Cal. 249, 257 (97 Pac. 423). No error was committed as alleged.

2. It is maintained that the evidence relied upon for that purpose is insufficient to establish the alleged promise by the defendant to pay the plaintiffs' claim, if they would complete the plumbing. Herman Schade, in answer to the question, "What occurred in relation to the request of the defendant to complete the house?" testified as follows:

"Why, on the morning of January 12th I picked up the abstract, and I noticed where the Merchants' Hardware Company had put a lien on Mr. Muller's building; so I spoke to my brother Henry and Mr. Ryan about it; and they said, 'You better go see, and see what he intends to do, or we will put on a lien.' I said, 'All right; I will go see him.' So I went up, and I seen Muller, and I told him what I seen in the abstract, that the Merchants' Hardware people had filed a lien, and he thought that was a shame to think they would put a lien on his house, whereas they could have come right down and he would have paid the bill. I said, 'Mr. Muller, that is just what I wanted to know, whether we would put a lien on?' And he said: 'No, no, no; you go right ahead and finish the work. I am going to pay all the bills, and then I am going to look to you and Hall.'"

On cross-examination this witness practically repeated the testimony quoted. The bill of exceptions referring thereto reads:

"The foregoing evidence of Herman C. Schade and testimony corroborative thereof is all the evidence in the case to support the promise sued on in this case."

No part of the confirmatory testimony referred to is incorporated in the transcript before us. From the defendant's declaration to Herman Schade:

"You go right ahead and finish the work. I am going to pay all the bills, and then I am going to look to you and Hall."

—a promise to pay the plaintiffs' claim may reasonably be implied.

3. Herman Schade, being a surety on the bond, guaranteeing a faithful execution of Alton's contract and a delivery of the building free from liens, claims or demands, could not enforce a lien on the defendant's real property or maintain an action against him for labor performed upon or material furnished and used in the construction of the house in excess of the contract price: *Hand Mfg. Co.* v. *Marks,* 36 Or. 523 (52 Pac. 512, 53 Pac. 1072, 59 Pac. 549).

4. The answer does not aver, nor is there any testimony in the bill of exceptions tending to show, that Herman Schade became a surety on Alton's bond on account or for the benefit of the copartnership. In the absence of such allegation and proof, it will be presumed that he was acting in his individual capacity, and not for the firm of which he was a member, when it does not appear that the partnership was engaged in furnishing indemnity undertakings.

5. This being so, the plaintiff could have enforced a lien for the reasonable value of the labor performed

and the material used in the "roughing in" plumbing of the defendant's house: *Burnett* v. *Glas,* 154 Cal. 249 (97 Pac. 423). Waiving the right to file a lien was a loss to the plaintiffs and an advantage to the defendant, thereby affording a sufficient consideration for his promise to pay for the plumbing, if the work was finished by the plaintiffs: 6 Am. & Eng. Ency. Law (2 ed.), 678; 9 Cyc. 311.

6. It is argued that the complaint is predicated upon the defendant's promise to pay an express contract price, while the court determined that the promise was to pay the reasonable value of the work and material; and, such being the case, the finding is insufficient to support the judgment, and an error was committed in this respect. The finding referred to is to the effect that, pursuant to the defendant's promise, the plaintiffs finished the plumbing which they had undertaken in their agreement with Alton for the sum of $449.92, "which was the original contract price, and which is also the reasonable value of the work and materials furnished."

7. The rule is quite general that, in an action upon an express contract, the plaintiff cannot recover upon proof of an implied agreement: 9 Cyc. 749. Where, however, under a complaint counting on the reasonable value of services rendered, testimony is received tending to establish a contract for the amount demanded, such sum as disclosed by the evidence will be construed as the reasonable value in order to effectuate substantial justice: *West* v. *Eley,* 39 Or. 461 (65 Pac. 798). To the same effect, see, also, *Elder* v. *Rourke,* 27 Or. 363 (41 Pac. 6). Whether or not, in the case at bar, any testimony was received tending to establish the reasonable value of the labor employed or the material furnished in plumbing the house is not dis-

closed by the bill of exceptions. The court having found that the defendant promised to pay the plaintiffs $449.92, which was the original contract price, the further statement that such sum "is also the reasonable value of the work and materials furnished" was immaterial and does not trench upon the rule mentioned. The finding is considered adequate to uphold the decision.

8. The plaintiffs on February 9, 1914, secured a judgment against the defendant for $449.92, the original express contract price, with interest from March 1, 1910, when the plumbing was completed. The testimony of Herman Schade to the effect that Muller stated to him:

"You go right ahead and finish the work. I am going to pay all the bills, and look to you and Hall"

—reasonably means that the defendant promised to discharge all the obligations that Alton had incurred in performing the agreement to build the house, including the contract prices which he had stipulated to pay. The finding, when read in connection with such testimony, imports a promise on the part of the defendant to pay the plaintiffs the original contract price for the labor performed and the materials furnished in executing their agreement with Alton, thereby entitling the plaintiffs to interest on their demand from the time the work was completed.

9. But, however this may be, Herman Schade, in referring to the time when the plumbing was finished, testified, in substance, that, having submitted a bill for the work, the defendant said it was all right, thereby indicating a settlement of the account and an ascertainment of the sum due thereon, upon which basis the interest was properly computed from that time. Other alleged errors are assigned, but, as they

are deemed immaterial, the judgment should be affirmed; and it is so ordered.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BURNETT, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.