Argued February 20, affirmed, except as to costs, March 5, 1918.

# CITY OF SEASIDE *v.* OREGON SURETY & CASUALTY CO.

(171 Pac. 396.)

**Municipal Corporations—Bond of City Treasurer—Essentials.**

1. A bond of a city treasurer, providing that the surety shall make good any loss sustained by the city by any act of fraud or dishonesty of the treasurer amounting to larceny, was sufficient; it not being necessary to detail in the bond the treasurer's duties fixed by law.

**Municipal Corporations—Bond of City Treasurer—Larceny.**

2. That the money appropriated by the city treasurer to his own use passed through the vaults of a bank of which he was cashier did not render the funds not a subject of larceny within his official bond securing against larceny.

**Appeal and Error—Exclusion of Evidence—Invited Error.**

3. Where tendered evidence was excluded upon solicitation of defendant, defendant cannot complain.

**Municipal Corporations—Treasurer's Bond—"Larceny."**

4. A bond of a city treasurer, agreeing to make good any loss sustained by the city by any act of fraud or dishonesty of the treasurer amounting to "larceny," included larceny as defined by Section 1957, L. O. L., as to conversion of public money.

> [As to what constitutes larceny, see notes in 57 Am. Dec. 271; 88 Am. St. Rep. 559.]

**Interest—Accrual of Right—Unliquidated Demand.**

5. Under Section 6028, L. O. L., providing for interest on money received for the use of another and retained beyond a reasonable time, in an action on an official bond of a defaulting city treasurer not stipulating for interest, there could be no recovery of interest until after judgment; the amount of liability not having been ascertained or agreed upon.

**Costs—Disbursements of First Trial.**

6. Where defendant secured an erroneous decision on the first trial, which decision was set aside on plaintiff's motion, plaintiff, who secured judgment on the second trial, was entitled to disbursements incurred at the first trial under Section 566, L. O. L., providing that party entitled to costs shall have allowed all necessary disbursements.

**Witnesses—Attendance Outside of County—Mileage.**

7. Under Section 3145, L. O. L., entitling witnesses to mileage at the rate of 10 cents a mile in going to and returning from the place of service except in counties of 50,000 inhabitants, where the rate is fixed at 5 cents, a witness from a county of the first class, attending court in a county of the latter class by order of the court, would be entitled to double mileage at the rate of 5 cents only.

**Constitutional Law—Witnesses—Reversals and Annuities.**

8. Section 3145, L. O. L., entitling witnesses to mileage at the rate of 10 cents a mile except in counties of 50,000 inhabitants, where the rate is fixed at 5 cents, applies to all citizens, and is not inimical to Article I, Section 20, of the Constitution, providing that no law shall be passed granting to any citizen privileges of annuities, which upon the same terms shall not equally belong to all citizens.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action brought by the plaintiff, City of Seaside, a municipal corporation, to recover the sum of $7,949.09 together with interest thereon at the rate of 6 per cent per annum from November 4, 1910, upon a bond to insure the fidelity of E. N. Henninger, as treasurer of Seaside, during his term of office of two years. It was executed and delivered by E. N. Henninger and the Union Guarantee Association to the plaintiff on March 9, 1910, and later, the defendant, Oregon Surety & Casualty Company, took over the business of that association and assumed all the liabilities upon the bond. The cause was tried by the court and jury. Judgment went for the plaintiff for the principal amount claimed without interest. Defendant appeals from the principal judgment and as to certain costs. Plaintiff also appeals from that part of the judgment denying it interest. A former appeal

87 Or.—40

of this case was taken to this court, see 80 Or. 345 (157 Pac. 150), wherein a clear statement of the issues was fully made. We will therefore refer only to those directly involved herein. Among its several provisions the instrument recites the following:

"WHEREAS, Edmund N. Henninger, hereinafter called the 'Employee,' has been appointed to the position of Treasurer in the service of the Town of Seaside, Oregon, hereinafter called the 'Employer,' and has been required to furnish a bond for his honesty in the performance of his duties in the said position. * *

"Now THEREFORE, in consideration of the sum of One Hundred Five and 00-100 Dollars, paid as a premium for the period from March the 9th, 1910, to March the 9th, 1912, at twelve o'clock noon, and upon the faith of the said statement as aforesaid by the Employer, which the Employer hereby warrants to be true, it is hereby agreed and declared, that subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the Employer to recover under this Bond, the Association shall, within three months next after notice, accompanied by satisfactory proof of a loss as hereinafter mentioned, has been given to the Association, make good and reimburse to the Employer all and any pecuniary loss sustained by the Employer, of money, securities, or other personal property in the possession of the Employee, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said Employee in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement, and which shall have been committed during the continuance of this Bond, or any renewal thereof, and discovered during said continuance, or within six months thereafter, or within six months from the death or dismissal, or retirement of the Employee from the service of the said Employer. PROVIDED always that said Association shall not be liable, by virtue of this Bond, for any mere error of judgment or injudicious exercise of discretion on the part of said Employee, in and

about all or any matters wherein he shall have been vested with discretion, either by instruction or rules and regulations of the said Employer. And it is expressly understood and agreed that the said Association shall in no way be held liable hereunder to make good any loss that may accrue to the said Employer by reason of any act, or thing done, or left undone, by said Employee, in obedience to, or in pursuance of any discretion, instruction or authorization conveyed to and received by him from said Employer, or its duly authorized officer in its behalf; and it is expressly understood and agreed that the said Association shall in no way be held liable hereunder, to make good any loss by robbery, or otherwise, that the said Employer may sustain, except by direct act, or connivance of said Employee. * * The Associations shall not in any wise be responsible to the Employer under this Bond, to a greater extent than Fifteen Thousand and 00–100 ($15,000.00) Dollars. * * it being the true intent and meaning of this Bond that the Association shall be responsible only as aforesaid, for moneys, securities or property diverted from the Employer through fraud or dishonesty, amounting to larceny or embezzlement as aforesaid on the part of the Employee within the period specified in this Bond, while in the discharge of the duties of the office or position to which he has been elected or appointed. * * "

The plaintiff seeks to recover because the city treasurer as alleged in the complaint

"wrongfully and unlawfully embezzled and failed to account for and failed to pay over to the plaintiff or the successor in office of said E. N. Henninger, the full sum of $7,949.09, which said sum of money the said E. N. Henninger as such treasurer wrongfully and unlawfully stole and embezzled."

The evidence tended to support the averments of the complaint and to show that Henninger, as treasurer, on or about November 4, 1910, "had received and not paid out the sum of $7,949.09." Henninger was

cashier of the Bank of Seaside and committed suicide on November 4, 1910. After this action was commenced the receiver of the bank paid a dividend of ten and one-tenth per cent and the city received $775 on that account. The jury returned a verdict in favor of the plaintiff in the sum of $7,174.09, principal, and the further sum of $2,606.50, interest thereon. Judgment was duly entered upon this verdict but upon motion to set aside the verdict and judgment the court modified the judgment as to the item of interest and entered judgment in favor of the plaintiff and against the defendant in the sum of $7,174.09, and costs and disbursements taxed at $432.65.

AFFIRMED, EXCEPT AS TO COSTS.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Beckett, Mr. Frank Spittle* and *Mr. F. C. Howell,* with an oral argument by *Mr. S. C. Spencer.*

For respondent there was a brief over the names of *Mr. George C. Fulton, Mr. A. C. Fulton* and *Mr. Victor J. Miller,* with an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant contends that the policy only guaranteed the honesty and integrity of Henninger as treasurer, and did not insure the repayment. of the fund to the city in any event or provide against technical or statutory larceny as is provided in Section 1957, L. O. L. The plaintiff contends that because of that section the defendant was liable upon the policy when the treasurer did not repay the sum received by him, and the trial court so ruled and charged that larceny as mentioned in the obligation of defendant included

the definition of larceny contained in Section 1957, L. O. L. At the close of plaintiff's case counsel for defendant moved the court for a judgment of nonsuit which was denied. Defendant offered no evidence. A request was made that the court instruct the jury to return a verdict in favor of defendant, and also in accordance with defendant's theory of the case. This was refused. These rulings are assigned as errors.

The charter of the City of Seaside required the city treasurer to give a bond with surety in the sum of $15,000, but did not provide the form nor detail the conditions of such obligation. Defendant urges that the instrument is not a bond as required by the charter, but has only the force of a common-law bond; that the defalcation of the city treasurer does not come within the terms of the bond in that the failure to account for or pay over the money in his hands belonging to the city does not constitute fraud or dishonesty amounting to larceny or embezzlement. This contention was disposed of upon the former appeal by the opinion of Mr. Justice BENSON (80 Or. 345, 354, 157 Pac. 152, 153), where in anticipation of a new trial herein in expressing the view of this court as to whether the larceny defined in Section 1957, L. O. L., is covered by the language of the bond, the learned justice said:

"As we read this statute, it provides that when a public officer receives public moneys, the burden is upon such officer to pay the money to the party entitled thereto or to so account for it as to free his own skirts of dishonesty. Failing to do this, the *animus furandi* is a legitimate inference."

1. We reaffirm the terse and plain announcement made as a direction for the trial that has since been had in this cause wherein it was shown that as city treasurer, E. N. Henninger, received the sum of $7,949.09 be-

longing to the plaintiff city and failed to pay the same to the plaintiff or to anyone for it or to account for the same in any manner. No evidence was offered tending to show that the public funds were lost or destroyed in any innocent way. No conclusion can be drawn from the facts in evidence except that the city treasurer was guilty of larceny of public money as defined by the statute. By the explicit terms of the obligation of the defendant company by whatever name the instrument may be called, the obligor is required to pay to the city the sum so lost by the dishonesty of its official. By the recitation of the memorandum in writing it is apparent that it was executed with a view to conforming to the requirements of the city charter, and we think it is presumed that the statute of this state in regard to larceny of public money was also contemplated. Perhaps it may be said that the document is a kind of blanket agreement spread over a large area and was intended as a sort of "cure for all ills"; yet when the pertinent part is sifted out of the verbiage we find that in consideration of the premium mentioned "it is hereby agreed and declared" that "the association shall within" the time specified

"make good and reimburse to the employer (the city) all and any loss sustained by the employer * * of money, securities, or other personal property in the possession of the employee, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said employee in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement, and which shall have been committed during the continuance of this bond."

The association shall not be responsible under this bond for more than $15,000. It seems to us that the

obligation is just as efficacious as though the usual words "are held and firmly bound" had been employed. The obligation of the association is plain.   The written instrument shows that Henninger was treasurer of the city.   The law fixes his obligations and it was unnecessary to detail the same in the bond.   There was no error in denying the motion of defendant for a nonsuit and refusing to direct a verdict for defendant.

It is contended by counsel for defendant that the words of the contract "fraud or dishonesty amounting to larceny or embezzlement" mean the dishonest conduct of the treasurer, which is equivalent to larceny or embezzlement; that the contract "cannot mean conduct which does not involve a crime, nor does it involve a crime statutory or otherwise, in which there is absent the element of fraud or dishonesty."   This claim may be wholly conceded.   It is only necessary to refer again to the law of this case as declared in the former opinion where it was held that the allegation of the complaint as to the violation of Section 1957 by the larceny of the city's money constitutes fraud and dishonesty.   The evidence in the case shows *prima facie* a crime on the part of Henninger.   It has not been explained or refuted so "as to free his [Henninger's] own skirts of dishonesty."

In *Rankin* v. *United States Fidelity & Guaranty Co.,* 86 Ohio St. 267 (99 N. E. 314), cited by defendant, the court had under consideration the terms of a bond precisely the same as those in this case.   It was held that

"when the terms of a bond clearly indicate the intention of the obligor and obligee that there shall be an indemnity to the latter on account of the default of an employee, doubtful terms will be so construed as to effectuate rather than to defeat that intention."

It might be apropos to quote with suggestiveness of application from page 317 of that opinion, namely, that

"a decision in favor of the Guaranty Company upon this ground would imply that its business in this state consists in the collection of premiums."

2, 3. The contention of defendant that the defalcation of Henninger did not amount to larceny under our statute is made upon the theory that he was cashier of the Bank of Seaside and deposited the city's money in the bank and it failed. The evidence tended to show, however, and the jury found that Henninger as cashier received and disbursed the money· for the bank for a long time before it closed its doors; that but a small percentage of the money remained in the bank when Henninger committed suicide and that he had appropriated the same to his own use. The fact that the money passed through the vault of the bank would not render it not the subject of larceny. When Mr. F. S. Godfrey, receiver for the defunct bank, was on the witness-stand, for the purpose of showing that Henninger who was cashier of the bank and received and paid out all of its money was responsible for the wrecking of the bank, plaintiff's counsel asked the witness: "How much money was in the bank at the time it closed its doors, if you know?" Upon objection of counsel for defendant as irrelevant the answer was excluded. Thereupon counsel for plaintiff offered to prove by the evidence and stated that the witness would testify that at the time he was appointed receiver of the Bank of Seaside and took charge of it, which was very shortly after and within two days after E. N. Henninger committed suicide, there was less than $500 in the bank vaults; that the bank had received on open accounts deposits aggregating $70,000,

and was indebted to that amount at the time the bank was closed. Upon objection of defendant's counsel the tender of the evidence was rejected. Under this state of the record the defendant as Henninger's sponsor, cannot claim any advantage by contending that the evidence shows that the money in question was paid to Henninger at the bank and that he deposited it in the bank or that the loss was occasioned by the failure of the bank. The evidence in regard to the transaction at the bank having been kept from the jury at the solicitation of defendant we are of the opinion that that feature of the case is not before this court. If there was any error in this respect it was invited by the defendant and it cannot complain: *Caldwell Bk. & T. Co.* v. *Porter,* 52 Or. 318, 331 (95 Pac. 1, 97 Pac. 541) ; *State* v. *Ryan,* 56 Or. 524 (108 Pac. 1009). It is claimed by defendant that the court erred in giving the following instructions to the jury:

4. ''Larceny is ordinarily defined to be the taking and carrying away of the property of another with intent to convert it to your own use. But the statute of the state has a further definition of larceny. Section 1957 provides : 'If any person shall receive any money whatever for this state, or for any county, town or other municipal or public corporation therein, or shall have in his possession any money whatever belonging to such state, county, town or corporation, or in which such state, county, town or corporation is interested, and shall in any way convert to his own use any portion thereof, or shall loan, with or without interest, all or any portion thereof, or shall neglect or refuse to pay over any portion thereof as by law directed and required, or when lawfully demanded so to do, such person shall be deemed guilty of larceny.' The word 'larceny' as used in this bond means not only its ordinary acceptation of taking and carrying away, what we commonly call stealing, but it also includes the meaning given by this statute.''

The instruction correctly states the law of this state as applied to the facts in this case and is approved. The judgment for the principal amount, $7,174.09, is affirmed.

5. The court eliminated from the judgment the amount of interest, $2,606.50, as found by the verdict and plaintiff appeals from that part of the judgment. There are two ways only in which interest may be collectible: (1) By contract to pay interest; and (2) by statutory authority. In the present case the claim is made by virtue of the latter, namely, Section 6028, L. O. L., as it was prior to the amendment by Chapter 358, Laws of 1917. In the case of *Holtz v. Olds,* 84 Or. 567, 581 (164 Pac. 583, 1184), the rule in *Baker County v. Huntington,* 48 Or. 593, 603 (87 Pac. 1036, 89 Pac. 144), was reaffirmed. This rule has stood too long to be disturbed otherwise than by legislation. The Baker case like the present one was for the enforcement of the collection on an official's bond on account of the defalcation of that officer. The ruling in that case precludes the recovery of interest by plaintiff. The bond in suit is not for a liquidated amount, but provides for a penalty or indemnity. The amount in so far as the liability of the defendant is concerned was not ascertained, fixed or agreed upon in any way until the judgment herein was rendered. Until then as to the defendant the amount due was unliquidated. A *bona fide* contest of the right to recover was made. The bond does not stipulate for the payment of interest. On the contrary it provides for a certain time of payment after proof of loss. For different phases of the question see *Sorenson v. Oregon Power Co.,* 47 Or. 24 (82 Pac. 10); *Richardson v. Investment Co.,* 66 Or. 353 (133 Pac. 773); *Templeton v. Bockler,* 73 Or. 494, 507 (144 Pac. 405); *Schade v. Muller,* 75 Or. 225,

233 (146 Pac. 144); *Sargent* v. *American Bk. & Trust Co.,* 80 Or. 16, 39 (154 Pac. 759, 156 Pac. 431); *Carlton Lumber Co.* v. *Lumber Ins. Co.,* 81 Or. 396 (158 Pac. 807, 159 Pac. 969). The judgment as to interest is affirmed.

6. Over the objection of defendant the trial court allowed plaintiff's disbursements incurred upon a previous trial of the case. This is assigned as error. This raises the question as to costs and disbursements upon a former trial of the cause when the verdict was returned in favor of defendant and on motion of plaintiff set aside. It is urged by counsel for defendant that the matter is governed by the rule announced in *Wade* v. *Amalgamated Sugar Co.,* 71 Or. 75, 77 (142 Pac. 350), where Mr. Chief Justice McBRIDE remarked that "there is a dearth of authority on this subject, and plausible arguments may be urged on either side." The common-law rule that "where after a reversal a party again recovered judgment, he could recover only the disbursements of the last trial" was adopted. The basis of this rule is that as the party erroneously obtained the former judgment he is not entitled to disbursements incurred upon such previous trial. In the present case we have the reverse as defendant secured an erroneous decision upon the first trial which was reversed by the trial court and the granting of a new trial was affirmed upon appeal on account of an erroneous charge to the jury. Plaintiff was compelled to have its witnesses in attendance upon such trial; otherwise judgment would have gone against it beyond recall. The prejudicial errors of the first trial were not the fault of plaintiff. The plaintiff having recovered a judgment for $7,174.09, the question now presented under Section 566, L. O. L., which provides that "a party entitled to costs shall also be allowed for all

necessary disbursements" is: Were the disbursements of plaintiff upon the former trial necessary? The trial court found that they were and such ruling should be upheld.

7, 8. The court denied defendant's objection to the allowance of double mileage at ten cents per mile for witnesses residing and served with a subpoena in Clatsop County who attended by order of the court. Defendant contends that such witnesses are entitled to only ten cents per mile in accordance with Section 3145, L. O. L., which provides:

"Every officer or person whose fees are prescribed in this title who shall be required to travel in order to execute or perform any public duty, in addition to the fees hereinbefore prescribed, shall be entitled to mileage at the rate of ten cents per mile in going to and returning from the place where the service is performed; provided, however, that in counties containing more than fifty thousand inhabitants, jurors and witnesses shall be entitled to such mileage at the rate of five cents per mile and no more in so going and returning."

Counsel for plaintiff contend that witnesses living in a county where ten cents a mile is allowed by statute should be allowed the larger rate for attendance upon court in a county where the lesser rate prevails. While there may be reason to regret the want of uniformity of the enactment it is a legislative question in which various conditions such as transportation facilities and other metropolitan environments are taken into account by the legislative mind. A litigant submitting himself to the jurisdiction of a court in either class of counties is bound by the law applicable to that county. The law applies to all citizens alike and is not inimical to Article I, Section 20, of the Constitution. Plaintiff's witnesses subpoenaed and or-

dered to attend court from outside of Multnomah County should be allowed double mileage at the rate of five cents per mile or ten cents per mile.

The judgment of the lower court as to the taxation of costs will therefore be corrected so as to allow plaintiff for the Clatsop County witnesses ten cents double mileage instead of twenty cents. In all other respects the judgment is affirmed.

AFFIRMED, EXCEPT AS TO COSTS.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE McCAMANT concur.