Argued at Pendleton October 28, 1929; reversed and remanded February 18, 1930

## WILLIAMS *v.* LEDBETTER

(285 P. 214)

*Geo. T. Cochran* of La Grande (Cochran & Eberhard of La Grande on the brief) for appellant.

*R. J. Green* of La Grande (Green & Hess of La Grande on the brief) for respondent.

BELT, J. This is an action upon an express oral contract to recover for services rendered by plaintiff

as an automobile salesman for defendant. Plaintiff claimed that he was to receive 5 per cent of the price list of automobiles sold and 10 per cent of the price list on accessories. Defendant asserted that, under the contract of employment, plaintiff was to receive 5 per cent of the price list on the automobiles which he sold, but was to get no commission on the accessories. Defendant answered, denying the contract as alleged in the complaint and setting forth two counterclaims, one for gas and oil alleged to have been sold to plaintiff and the other for the reasonable value of the use of an automobile which plaintiff drove for his own benefit. Verdict and judgment were had for defendant.

■ ■ Aside from the counter-claims, the vital issue was: What was the contract? Was plaintiff to receive compensation for accessories sold? The issue was clear cut. Defendant, in support of his theory of the case, over objection, was permitted to answer the following question: "I will ask you this question, if you know the custom, whether or not you know the general custom in the state of Oregon or in the Northwest generally the general custom as to the amount of commission paid a salesman for the sales of automobiles?" Defendant answered: "The general custom is a percentage on the factory list price, and nothing else."

"Q. That is the universal custom is it throughout the Northwest?

"A. Yes."

It is elementary that custom or usage is not admissible to alter or contradict the terms of an express contract. There was no occasion for interpretation. The contract, relative to compensation, was plain and

unambiguous. As was well said in *Wilson v. Smith,* 111 Ala. 170 (20 So. 134):

"While there is conflict in the evidence of the terms of the contract, there is no ambiguity in them from the standpoint of either party, and hence no room for evidence of custom."

It was for the jury to say which contention was correct. Defendant should not have been permitted, under the guise of interpretation, thus to bolster up his case. The effect of this testimony was to lead the jury to believe that such usage and practice among automobile dealers was so universal, long established, and well known that the plaintiff must have contracted with reference to it and that, by implication, it became a part of their agreement. Obviously, plaintiff's case was substantially prejudiced by such evidence. The same character of evidence was given by other witnesses in behalf of defendant.

The rule is thus stated in 17 C. J. 502:

"But where the making of an express contract is admitted, and its terms are disputed, such terms can not be established by evidence of usage."

In Amer. and Eng. Ency. of Law (2d Ed.), Vol. 29, p. 437, it is said:

"Where both parties rely upon an express agreement on a particular point, and the only dispute is as to what were the terms of such agreement, proof of usage is not admissible on the point, since they can not be presumed in such case to have intended to incorporate the usage into their contract."

Lawson on Usages and Customs, § 187:

"Where a contract is by word of mouth, and the controversy is not as to the meaning of the terms used by the parties, but as to what precise terms had been in fact used, evidence of custom is not admissible."

In *Wilkins v. Kessinger,* 90 Wash. 447 (156 P. 389), there was a dispute as to a broker's commission under the terms of an oral contract. The court said:

"The rule is that where the terms of the contract as alleged are not ambiguous or of doubtful meaning, evidence of a local custom or usage is inadmissible for the purpose of supporting the claim of either party as to what the terms of the express contract were."

Also see *Holmes v. Pettingill,* 60 N. Y. 646; *Krueger v. Lake Trading Co.,* 150 Wis. 569 (137 N. W. 776); *Currie v. Syndicate Des Cultivators Des Oignons a' Fleur,* 104 Ill. App. 165; *McIntosh v. Pendleton,* 75 App. Div. 621 (78 N. Y. S. 152).

■ It is argued, however, that the question relative to custom was equivalent to an inquiry as to what was the customary or usual compensation of automobile salesmen. Certainly the question itself does not so indicate. Such is not the contention of counsel for defendant. The defendant has at all times stood squarely upon the proposition that evidence of custom was admissible. In *Martin v. Fletcher,* 77 Or. 408 (149 P. 895), the plaintiff was seeking to recover the "customary rental" for certain lands leased to the defendant. The lower court rejected the testimony tending to show the reasonable rental value of the land and construed the complaint as pleading custom as a basis for the cause of action. On appeal, Mr. Justice BEAN, speaking for the court, clearly recognized the distinction between "custom" and "customary rental value" and held that the case was submitted to the jury upon the wrong theory. In view of this decision, it seems illogical to say that the question asked in the instant case relative to custom was the equivalent of one pertaining to "customary value."

■ If the defendant was talking about "customary value" of the services rendered and not the "general custom" among automobile dealers relative to such contracts of employment, a far different question would be presented. Perhaps, by the weight of authority, evidence of reasonable value of services is admissible where parties to a special contract are in dispute as to the terms of compensation, as tending to show which theory is more likely to be true. Such evidence would go to the probability or improbability of the alleged agreement. Of course, if A actually agreed to pay B $20 per day to split rails, the "customary" or reasonable value of such service would be immaterial. If, however, there was dispute between the parties as to whether the compensation was $20 or $5 per day, evidence of value would aid the jury in determining which party was telling the truth. It would weigh heavily as to the probability of their respective statements. See note to *Edelen v. Herman,* 162 Ky. 500 (172 S. W. 936, in L. R. A. 1915C 1208), where conflicting authorities are collated. This court, in actions on a *quantum meruit* for services, has held evidence of an express contract admissible on the theory that the stipulated price becomes the *quantum meruit* in the case: *Toy v. Gong,* 87 Or. 454 (170 P. 936); *West v. Eley,* 39 Or. 461 (65 P. 798), but as said in *Schade v. Muller,* 75 Or. 225 (146 P. 144):

"The rule is quite general that, in an action upon an express contract, the plaintiff can not recover upon proof of an implied agreement." Citing 9 Cyc. 749.

But, as before stated, the customary or reasonable value of the services rendered is not in the case. If the question was not thoroughly considered in *Schade v. Muller,* supra, it will be time to do so when the point

is here for consideration. No case has been directed to our attention holding that evidence of custom is admissible under such circumstances. Neither have we seen any authority to the effect that the question asked is equivalent to an inquiry relative to reasonable value of the services rendered.

■ Plaintiff assigns error in admitting evidence in support of the third further and separate answer. It is his contention that the counter-claim is based on tort and therefore not a proper answer to a complaint based on contract. No demurrer or motion was interposed to the counter-claim. Objection was first made on trial to the introduction of any testimony. The pleading, under such circumstances, is entitled to a liberal construction: *Hackett Digger Company v. Carlson,* 127 Or. 386 (272 P. 260). Viewing it in the light most favorable to the pleader, we think it was his intention to waive the tort and recover upon an implied agreement to pay the reasonable value of the use of the automobile.

We see no objection to the instructions given to which plaintiff took exception.

Judgment is reversed and the cause remanded for a new trial.

---

COSHOW, C. J. (dissenting). This is an action instituted by plaintiff to recover from defendant for services rendered. Defendant Ledbetter maintains a garage in La Grande and sells automobiles. Plaintiff was employed by defendant to sell automobiles. Plaintiff claims that he was to receive 5 per cent of the price list of every automobile and 10 per cent of the price list of all accessories he sold. Defendant claims that plaintiff was to receive 5 per cent of the price list of all automobiles he sold; nothing for selling the acces-

sories. Defendant's contention is that 5 per cent on the sale price of the automobiles was to compensate plaintiff for sale of accessories as well as for the sale of automobiles. Defendant pleaded two counter-claims. First, one for gas and oil alleged to have been sold to plaintiff by defendant and the other for the use of an automobile which defendant claims plaintiff drove 2,760 miles for his own benefit and use and without permission, and that the reasonable value of the use of said automobile was 4 cents per mile or a total of $110.40. The verdict was in favor of defendant. Judgment was entered that plaintiff take nothing from his complaint, and that defendant recover his costs and disbursements. Plaintiff in his appeal makes four assignments of error. The first alleged error is based on the admission of testimony regarding the customary payment for sale of automobiles. The second alleged error is based on the court's ruling admitting evidence of the reasonable value of the use of said automobile. The third assignment of error is based upon two instructions given by the court over plaintiff's objection, and the fourth assignment is based upon the court's refusal to give an instruction requested by plaintiff.

It is well established in this jurisdiction that usage is never admissible to prove a contract: § 727, Or. L., subdivision 12; *Lowenstein & Sons v. Noon Bag Co.,* 111 Or. 421, 445 (226 P. 222). Evidence of a general custom is admissible to aid in the interpretation of a contract: *Crosland v. Sloan,* 123 Or. 243, 251 (261 P. 701).

The question objected to regarding custom and answered thereto was as follows:

"Q. I will ask you this question, if you know the general custom in the state of Oregon or in the

Northwest generally, the general custom as to the amount of commission paid a salesman for the sale of automobiles?

"A. The general custom is a percentage on the factory list price, and nothing else."

Another witness was permitted to make answer to a similar question:

"Q. What is that custom, Mr. Goss?
"A. The custom is to pay a commission on the factory list price of the car, and if the accessories are included in the factory list, a salesman is paid a commission on them, but if they are not included in the factory list, there is no commission."

A Mr. Smith was allowed to respond to a similar question as follows:

"Q. What is that custom, Mr. Smith?
"A. Well, the salesman gets a commission on such equipment as the factory puts on. If the dealer puts it on, I have never known of anybody to allow a commission on it."

The interrogatories were seasonably objected to in this language:

"Mr. Cochran,—Objected to for the reason this is an action brought upon a definite contract for a definite commission upon a definite promise. When it is upon a definite promise, and sued upon a definite contract then custom can not be introduced to alter or vary the terms of the contract. That is a proposition that is laid down universally in the books, that when there is any ambiguity, or it is an implied contract, then custom comes in; but where it is a definite contract with a definite promise, then custom can not be admitted to vary its terms."

Plaintiff later advanced the further objection "as incompetent, irrelevant and immaterial, no custom plead, and not within the issues, and an attempt to vary the terms of a contract."

The word "custom" as used in this connection. is synonymous with usage.

"As may be seen from the foregoing definitions, there is a marked distinction between a usage and custom, to which the courts have called attention, but which has not in all cases been observed; and the term 'custom' has frequently been used as a generic term. In this article the term 'custom' will, except where an intention to use it in its technical sense is indicated, be used as it ordinarily is by the courts as a term coordinate with 'usage,' and not as indicating a usage which has acquired the status of a rule of law." 17 C. J. 447-8.

That "custom" was so used in the questions objected to is obvious for appellant states the principle he relies upon thus:

"Evidence may be given of usage to explain the true character of a contract or instrument where such true character is not otherwise plain, *but usage is never admissible except as a means of interpretation:* subdivision 12, section 727, Or. L., * * * *Lowenstein v. Noon Bag Co.,* 111 Or. 421 (226 P. 222)."

The asterisks represent other authorities to the same point. If courts fail to distinguish between "custom" and "usage" then we should not assume that a jury composed of persons not learned in the law would distinguish the technical difference between them. Plaintiff treats the term "custom" as equivalent to "usage." We are justified in so construing the term "custom" as used in the offending questions:

"The word 'custom' is also employed by the courts in its more popular sense of a practice or course of acting. It is in this sense that we find it used most frequently in the discussion of the admissibility of evidence of 'custom' as bearing upon questions of negligence": 17 C. J. 446, note 5.

"A usage in its most extensive meaning includes both custom and prescription; but in its narrower signification it refers to a general *habit, mode, or course of procedure*": 17 C. J. 447.

The interrogatories objected to amount then to no more than inquiring for the customary or usual compensation of automobile salesmen. For the purpose of establishing a custom or usage the questions were inadmissible; but were competent for the purpose of enabling the jury the better to determine the controversy. It does not meet the issue to say that usage is not admissible to controvert a contract. No one claims that it is. The evidence was offered for the purpose of assisting the jury to determine what was the contract between the parties.

The authorities are divided on the question. The weight of authorities is against the competency of the evidence solicited in the language framing the questions: 17 C. J. 508, et seq., §§ 77, 78; *Simms v. Sullivan,* 100 Or. 487 (198 P. 240, 15 A. L. R. 678); *Maeder Steel Products Co. v. Zanello,* 109 Or. 562, 578 (220 P. 155); *Yreka Lum. Co. v. Lystul-Stuveland Lum. Co.,* 99 Or. 291, 297 (195 P. 378); *Wilkins v. Kessinger,* 90 Wash. 447 (156 P. 389); 27 R. C. L. 175, notes 14, 15. Very respectful authorities are found where the controversy is over terms of hiring, compensation and kindred matters admitting evidence to explain ambiguous terms of a contract and where the contract relied on is uncertain to assist in ascertaining the terms of the contract.

"Evidence of a custom or usage which may properly be resorted to as an aid to the interpretation of a contract sued on, may, according to some authorities, be admitted for such purpose, although it is local or particular and not specially pleaded; but under the guise of interpretation a trade or local custom or usage which has not been pleaded can not be admitted to

defeat a contract or vary its express terms, and local commercial usages must be pleaded; and so of a custom to excuse the nonperformance of a duty prescribed by law'': 17 C. J. 517, § 79, cited with approval in *Yreka L. Co. v. Lystul-Stuveland L. Co.,* above.

"In the relation of employer and employee many customs have been recognized by the courts. For example, as to the term of a hiring; * * * and as to wages and compensation'': 17 C. J. 486, § 50.

"And so in case of doubt usage is admissible to interpret terms relating to compensation, weight, or measurement'': 17 C. J. 497, § 60, note 4.

*Jonsson v. Thompson,* 97 N. Y. 642; *McCarthy v. McArthur,* 69 Ark. 313 (63 S. W. 56). The headnote in *Jonsson v. Thompson,* above, reads as follows:

"In an action against a hotel keeper to recover an alleged agreed compensation for services as hostler, defendant claimed to set off moneys received by plaintiff as gratuities or 'scale moneys,' and offered to show that it was the universal custom at hotels to consider scale money as part of the compensation of the hostlers. This was objected to, and excluded.''

The case of *Edelen v. Herman,* 162 Ky. 500 (172 S. W. 936, L. R. A. 1915C, 1208), is directly in point. The syllabus fairly expresses the holding of the court. It is as follows:

"In case of a conflict between the parties as to the wages to be paid under a contract for domestic service, evidence of the customary rate for such service is admissible to aid the jury in determining what the rate fixed actually was.''

To this case is appended an extensive note upon "Evidence of value of services or of customary compensation on question as to the amount agreed upon.''

"The parties agree that there is a contract for services fixing the compensation, but they differ as to what that compensation is, the employee claiming it is a certain amount, the employer that it is a certain less

amount; may either or both of them show the customary compensation for similar services, or the value of such or similar services, not as responsive to the issue, but as bearing upon the probabilities of the evidence given on the one side or the other? By the weight of authority, evidence of value is admissible under such circumstances, but the tendency seems to be to exclude evidence of custom.''

''By the great weight of authority, where the parties to a special contract for services are in dispute as to the compensation fixed by the contract, evidence of the value of the service is admissible as bearing upon the probabilities of the case, that is to say, as tending to show which statement is more likely to be true. The purpose of the evidence is to corroborate the party offering it as giving probability to his statement in regard to the amount fixed by the contract, and to cast doubt and improbability upon the statement made by the other party.''

In my opinion the questions propounded and objected to amounted only to asking for the customary or usual compensation paid auto salesmen. It was not the intention to establish or prove a general usage, but to ascertain the customary commission paid for such services as were rendered by plaintiff.

Plaintiff alleged a certain specific contract. If he had satisfied the jury that defendant had agreed to the contract as alleged, plaintiff would have been entitled to recover notwithstanding evidence of a usage or customary compensation to the contrary. Custom or usage is not competent to dispute a contract. But defendant denied the alleged contract. Defendant's denial is in this language:

''Admits that the plaintiff was employed by the defendant to sell automobiles and accessories for the defendant at a commission of 5 per cent of the list price of automobiles sold.''

Defendant denies the other allegations of the complaint. Defendant does not allege any specific contract. His testimony indicates that there was no specific agreement, but a loose arrangement made between the two. It was necessary to inquire into the arrangements because no specific agreement was claimed by defendant. The customary arrangement made by dealers in automobiles with their salesmen was pertinent to place before the jury defendant's case. So while the questions as propounded were improper, I think the import was to ask for the customary compensation which was permissible. I believe the court, counsel, jury and witnesses so understood the question, and no harm was done plaintiff by permitting the answers.

I think that the case of *Crosland v. Sloan,* above, sustains the trial court in overruling the objection to the questions because usage was not pleaded. I am unable to distinguish the instant case from that case. Both cases involve the matter of usage or customary manner of acting—one as to place of inspection, the other as to customary compensation for service. In the Crosland case it was not error to admit evidence of a usage without pleading it. In order to be consistent the court should so hold in the case at bar. In addition, I repeat that there was no effort to establish a general usage. The intent was to present the customary compensation for the services which admittedly were rendered.

The second alleged error is based on the ground that in the allegations of the third further and separate answer defendant states a tort, which is not a proper counter-claim to an action based on contract. The

allegation referred to in the third further and separate answer is as follows:

"That between the 1st day of October, 1928, and the 15th day of October, 1928, both dates inclusive, the plaintiff used one new Essex coach automobile owned by the defendant, without the consent of the defendant, and drove the same approximately 2,760 miles, and that said plaintiff had and used automobile and the equipment, accessories and tires of said automobile during the above mentioned period of time and for the said mileage as herein mentioned and had and used the same for his own use and benefit during said period of time to the reasonable worth and value for the use and occupancy of said automobile and tires of the reasonable value of 4 cents per mile, or a total sum of $110.40, * * *."

Defendant waives the alleged tort in said defense and demands the reasonable value of the use of the automobile. The point was not raised until the case was on trial, and for that reason the pleadings should be liberally construed: *Menefee Lumber Co. v. Mac-Donald*, 122 Or. 579, 590 (260 P. 444); *Hackett Digger Co. v. Carlson*, 127 Or. 386 (272 P. 260).

It has been settled in this state that one may waive a tort, such as conversion, when the tort not only constitutes a loss to the owner but is also of pecuniary benefit to the tort-feasor: *Menefee Lumber Co. v. MacDonald*, above; *La Grande Nat. Bank v. Oliver*, 84 Or. 582, 586 (165 P. 682); *Le Clare v. Thibault*, 41 Or. 601, 608 (69 P. 552). We are satisfied that the allegations of the third further and separate answer are sufficient to support a counter-claim as against plaintiff's action for his services.

The third assignment is based upon two instructions given by the court. These instructions are to the effect, if they found from the evidence that the plain-

tiff used for his own benefit the automobile belonging to defendant without defendant's consent and without any agreement to pay therefor, the law implies a promise to pay therefor the reasonable value of the use thereof. We think the instructions correctly state the law. In this connection it will be noticed that the automobile for which defendant charges plaintiff was used on and between the 1st day of October, 1928, and the 15th day of October, 1928. Plaintiff was in the employ of defendant from the 1st day of May, 1928, to the 15th day of October, 1928. It is very clear, therefore, that defendant charged plaintiff for some special use made of the automobile by plaintiff. There was evidence to that effect. Therefore, the two instructions objected to were pertinent and proper.

The fourth assignment of error is based on a requested instruction, which is as follows:

"2. I further instruct you that an employer is bound to furnish to the employe, the proper materials and place for the kind of work contracted for, and if you find that the plaintiff used gas and oil and drove a car for demonstration purposes to secure the sale of automobiles for the defendant, or used a car under the orders of the defendant to perform this work, then the defendant can not charge the plaintiff therefor, without a special contract to that effect."

Plaintiff was not entitled to this instruction. There was no dispute between plaintiff and defendant about plaintiff using defendant's automobile in the performance of his engagement with defendant. The use of an automobile for which a charge is made was a special use which defendant claimed plaintiff made of the auto without the consent of defendant, or any right on the part of plaintiff so to use it. It would have been confusing to the jury to have given the instruc-

tion, which is the basis of assignment No. 4, because it implied that there was evidence to the effect that defendant did not furnish an automobile to plaintiff for demonstration purposes. As hereinbefore stated, the use of the automobile for which defendant makes the charge was for a part of October only. No charge is made against plaintiff for using an automobile during all the other dates between May 1 and October 15. There was no attempt to charge plaintiff for the use of an automobile for demonstration purposes. The judgment should be affirmed.

McBride, J., concurs in this opinion.