Argued March 4, affirmed September 11, petition for
rehearing denied November 4, 1970

BAHLER ET AL, *Appellants and Cross-Respondents,*
*v.* FLETCHER ET UX, *Respondents and*
*Cross-Appellants.*
474 P2d 329

*Donald H. Joyce*, Portland, argued the cause and filed briefs for appellants and cross-respondents.

*John J. Haugh*, Portland, argued the cause for respondents and cross-appellants. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before Perry,* Chief Justice, and McAllister, Sloan, O'Connell, Denecke, Holman, and Tongue, Justices.

## HOLMAN, J.

This is an appeal by plaintiffs from a decree of the trial court denying foreclosure of a trust deed.

Plaintiffs contracted with defendants to remodel

* Perry, C.J., retired June 1, 1970.

defendants' residence. An agreement was executed by defendants which required them to pay plaintiffs the contract price for the work in monthly installments. At the completion of the work, defendants executed a trust deed to secure the performance of their agreement to pay. Plaintiffs had a financing agreement with Alcoa Credit Company (Alcoa). They assigned their beneficial interest in the contract and trust deed to Alcoa, and Alcoa then paid them the contract price.

Plaintiffs agreed in their financing arrangement with Alcoa that, insofar as contracts transferred to Alcoa were concerned, all goods furnished to the customer would be of merchantable quality and fit for their intended purpose, and all services rendered would be performed in a good and workmanlike manner. The agreement also provided that Alcoa could insist that plaintiffs rescind any such transfer of any contract which plaintiffs had not so performed.

When defendants refused to make the payments required of them under the contract, Alcoa brought an action against plaintiffs to recover its money. Alcoa contended plaintiffs had not performed the work for defendants in a workmanlike manner. The judge in that case found for Alcoa and held that "the Fletcher job was not done in accordance with accepted practices and in substantial respects was not done in a workmanlike manner. The work was not performed as contracted * * ." As a result of this determination, the contract and trust deed were transferred back to the plaintiffs and Alcoa recovered the sum it had paid plaintiffs therefor. Plaintiffs then commenced the present proceeding to foreclose the trust deed.

■ In this case plaintiffs do not seek recovery for the reasonable value of the materials and services furnished to defendants. They seek to recover upon

the contract and to enforce the trust deed which secures the payments that defendants were to make pursuant to the contract. They cannot recover in *quantum meruit* on a cause of action which is based solely on a specific contract. *Flaherty v. Bookhultz et al*, 207 Or 462, 483, 291 P2d 221, 297 P2d 856 (1956); *Williams v. Ledbetter*, 132 Or 145, 150, 285 P 214 (1930). They are not entitled to recover upon the contract unless they have substantially performed it. If they are not entitled to recover upon the contract, they cannot enforce the trust deed which secures defendants' performance of their obligations thereunder.

■ It is defendants' contention that the holding of the trial judge in the previous litigation between plaintiffs and Alcoa, to the effect that plaintiffs had not performed the work in a workmanlike manner, is binding upon the plaintiffs in this case in accordance with the doctrine of collateral estoppel. Therefore, defendants claim that plaintiffs are not entitled to recover on the contract nor to foreclosure of the trust deed. The trial judge held that the plaintiffs were so precluded. By use of the term "collateral estoppel," we intend to refer to the rule preventing relitigation of a *particular issue or determinative fact* which was necessary to the prior decision of a *different cause of action* as compared with "res judicata" which usually refers to the rule preventing relitigation of the *same cause of action*.

Plaintiffs contend the trial court erred in applying the doctrine of collateral estoppel because defendants were not parties to the first case nor were they in privity with Alcoa. Contrary to a strained contention by defendants, they were not in privity with Alcoa. They had no relation with Alcoa and no interest in whether Alcoa recovered its money from plaintiffs.

However, the principal issue in the present case is identical with an issue decided in the prior case to which plaintiffs were parties. *See Burnett v. Western Pac. Ins. Co.*, 90 Adv Sh 1233, 1240, 469 P2d 602 (1970); *State v. George*, 253 Or 458, 461-62, 455 P2d 609 (1969); *State of Oregon v. Dewey*, 206 Or 496, 508, 292 P2d 799 (1956). The ultimate issue in the first case was whether plaintiffs had breached their financing agreement with Alcoa. In order to determine that issue, it was necessary to decide whether plaintiffs substantially performed their agreement with defendants. The court in the first case found that they had not.

The law of most jurisdictions and of Oregon is in conformance with plaintiffs' contention; and, if this court's decisions are left unchanged, collateral estoppel can have no application to the present case. *Wolff v. Du Puis*, 233 Or 317, 378 P2d 707 (1963); *Raz v. Mills*, 233 Or 452, 454, 378 P2d 959 (1963); ALI Restatement, Judgments § 93 (1942). For a compilation of cases, *see* 23 ALR2d 710 (1952). The reason given in support of the rule holding that collateral estoppel may be asserted only by a party or by one in privity with a party to the first case is that due process prevents a third party from being bound by the results of that litigation because he did not have his day in court; and, since he is not bound by the adjudication, it is unfair to allow him to assert it against one who was a party. The necessity that both be bound is referred to as mutuality. *See Raz v. Mills, supra* at 454. The estoppel is not mutual unless the one taking advantage of the earlier litigation would have been bound by it had it been decided to the contrary.

It is difficult to find many authorities who unqualifiedly support the reasoning behind the requirement of mutuality. Many support the results of the

rule to which there are certain recognized exceptions not applicable to the facts of this case. Application of the rule brings about the proper results in some cases through happenstance and inadvertence and not because mutuality is theoretically appropriate to a determination of whether collateral estoppel is properly applied in a given instance.

The doctrine of judicial finality, of which collateral estoppel is a part, is based upon two considerations. First, the protection of private litigants against the harassing necessity of litigating more than once the same issue or cause of action; and, second, the protection of the public's interest in preventing relitigation of matters once decided.[①] The first consideration has no application to the facts of this case because the person who has previously litigated the issue and who is desirous of the opportunity of doing so again is not seeking protection from the harassment of continuous litigation. Also, the person who is attempting to assert the previous determination has not previously litigated the issue and is asking that he not be required to litigate it at all.

The public's interest in minimizing relitigation of an issue once decided is subservient only to the requirement that a party be given a full, complete, and fair opportunity to litigate any issue upon which his rights depend. Whether a person has been given such a previous opportunity to litigate the issue has little to do with whether or not his adversary, who is seeking to assert the bar of collateral estoppel, is bound by the previous litigation. The irrelevance of mutuality to the application or non-application of col-

---

[①] Moore and Currier, *Mutuality and Conclusiveness of Judgments*, 35 Tul L Rev 301, 308 (1961).

lateral estoppel is described by Justice Traynor in *Bernhard v. Bank of America*, 19 Cal2d 807, 122 P2d 892 (1942):

> "The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided [citing cases]. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. * * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

> "No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend * * *." 122 P2d at 894-95.

In a somewhat different context, Jeremy Bentham made the following appropriate comment concerning mutuality:

> "* * * There is reason for saying that a man shall not lose his cause in consequence of the verdict given in a former proceeding to which he was not a party; but there is no reason whatever for saying that he shall not lose his cause in consequence of the verdict in a proceeding to which he *was* a party, merely because his adversary was not * * *." 3 Bentham, Rationale of Judicial Evidence 579 (1827), reprinted in 7 Works of Jeremy Bentham 171 (Bowring ed 1843).

The requirement of mutuality has been further analyzed as follows:

> "* * * Mutuality rests on a simplistic concept

of equality that would deny to one party an appropriate right or remedy because the corresponding right or remedy is not available to, or appropriate for, his adversary * * *.

"Mutuality as a doctrine for deciding the effect of judgments is of course indefensible * * *." Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties*, 68 Colum L Rev 1457, at 1461-462 (1968).

Those few who attempt to defend the theoretical soundness of requiring mutuality contend that there is a significant difference insofar as a person sought to be bound is concerned between a day in court against his first opponent and a day in court against his second one because of the fallibility of the litigation process.[2] The argument is presented by Moore and Currier, note 1 *supra*, as follows:[3]

"* * * [A]s Judge Goodrich has said, the conclusive effect of prior adjudication does not

"'. . . go so far as to make the finding in one man's case in a personal action a conclusion of

---

[2] *See* Spettigue v. Mahoney, 8 Ariz App 281, 445 P2d 557, 562 (1968):

"* * * The adversary system prevails in many aspects of the life of man but contest rules seldom provide that one contestant must be declared the loser to a competitor that he has never met on the field of contest.

"* * * * *.

"* * * While this court believes that our system of justice has no peer in this fallible world, nevertheless, it is unable to consider that our trial processes unerringly discover Truth. The selection of the judge and jury, the choice of counsel, the availability of witnesses, the manner of the presentation of their testimony, the dynamics of the rapport between witnesses and fact-finder, and the personalities and appearances of the parties as they impress the fact-finder in various ways, are all matters that defy scientific analysis, are affected by fortuitous circumstances and variously determine the outcome of a contest conducted in the courts of this country."

[3] *Also see* Greenebaum, *In Defense of the Doctrine of Mutuality of Estoppel*, 45 Ind L J 1 (1969).

ultimate truth. A law suit is not a laboratory experiment for the discovery of physical laws of universal application but a means of settling a dispute *between litigants*. That which is settled as a fact between them through a given piece of litigation under the principles of res judicata, binds only the parties themselves and those who are in such relation to the parties as to be considered in privity with them.'

"Thus the contention that when $X$ uses $A$'s judgment against $B$, $B$ has had his day in court, clearly begs the question: his day in court against whom? When $B$ was a party to the suit in which judgment was rendered, and $X$ was a stranger to that suit, $B$ has no more had his day in court against $X$ than if $X$ had been a party to the suit, and $B$ a stranger to it." Moore and Currier, *Mutuality and Conclusiveness of Judgments*, 35 Tul L Rev 301 at 310 (1961).

Granting that the outcome of litigation is fallible and that there is a difference in opponents, is such fallibility really relevant to a determination of whether an issue once decided should be relitigated? There may be numerous reasons why it is easier for $B$ to defeat $X$ than for him to defeat $A$. $X$ may be a very unappealing fellow with a poor lawyer, and he may be obviously rich besides. However, this does not mean that, on the average, a decision in favor of $B$ against $X$ is more likely to be correct than the previous decision against $B$ and in favor of $A$. If the unpredictability of the outcome of litigation is good cause for relitigation, there is no reason why identical parties should not be permitted to relitigate the same issue. To us, the fallibility of litigation, emphasized by the fact that $B$ has a different opponent seems a poor reason for relitigating an issue.

Most of those who defend the requirement of

mutuality do not attempt to do so on a theoretical basis but, rather, point to the unfair results which can come from allowing strangers to the first litigation to take unlimited advantage of issues decided there when they subsequently litigate with a person who was a party. There can be no doubt but that the unlimited use of collateral estoppel by a person who was neither a party nor in privity with a party to the original litigation may, in some instances, lead to unfair results. However, this fact is not a valid argument for the retention of the requirement of mutuality but only for the denial to third parties of the benefit of the previous litigation where unfairness would likely occur. Some of the unfair results which it is claimed will come from the abandonment of mutuality are discussed below.

It is contended that when a person is faced with multiple litigation arising out of a single occurrence, he will not be able to ration his litigation resources in accordance with the value of what is involved. If he is bound by an adverse decision in the first case to all the world with whom he may subsequently litigate, he cannot afford to lose a case which normally would be of little consequence to him. An example is the trial of an insignificant property damage case where serious personal injury litigation arising out of the same occurrence is in the offing. The appellate field also could be affected because a person might be forced into an appeal in the first of a series of cases arising out of a single occurrence, even though he had won an actual victory because the damages returned against him were minimal. For a case of this kind, *see Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F2d 532 (2d Cir 1965), *cert denied*, 382 US 983 (1966), where the Second Circuit, after abandoning the requirement

of mutuality in the case of *Zdanok v. Glidden Co.*, 327 F2d 944 (2d Cir), *cert denied,* 377 US 934 (1964), nevertheless refused to permit a passenger in an airplane crash to use a judgment obtained by another passenger where the amount of the judgment was comparatively insignificant. The reason for the refusal was the dilemma facing the Airlines in deciding whether to appeal when it had technically lost the first case, but, in a very real sense, had won it.

It is argued that subsequent unlimited use of the results of prior litigation by third parties against a party to the original litigation would result in a more vigorous defense being made in the first case than otherwise might have been made. Therefore, it is contended that litigation might actually be prolonged by the abandonment of mutuality. At least, it is claimed that the overall lessening of time spent on litigation might be much less than supposed.

While the arguments are ones of substance, we wonder how often it is that a person, when faced with multiple litigation arising out of a single factual situation, does not intentionally put his best foot forward, regardless of the nature of the first case. Also, there is always the possibility of avoiding prejudice by settling an insignificant case which the defendant determines it is tactically disadvantageous to try. There may be instances in which the party to the first case, at the time of that litigation, does not realize that subsequent litigation is in the offing. Depending upon the circumstances, this might be the basis for a valid argument that it would be unfair to preclude him from relitigating the issue. If actual unfairness would result, under all the circumstances of the particular case, collateral estoppel should not be applied, but its non-application has nothing to do with mutuality.

Another of the arguments against the abandonment of the requirement of mutuality revolves around what has been dubbed by Professor Currie as the "multiple claimant anomaly."[4] The illustration often used is the situation where fifty passengers are injured in a railroad accident. The first 24 passengers sue the railroad and are unsuccessful. Number 25 secures a judgment. If this adjudication of negligence is binding upon the railroad, its liability has been established in the remaining 25 cases. Currie, while approving of the abandonment of the mutuality requirement,[5] suggests that such a situation must be an exception to the rule, that one neither a party nor in privity with a party to the original litigation can prevent relitigation of an issue there decided when involved in subsequent litigation with one who was a party.

Courts which have abandoned the requirement of mutuality have tended to prevent relitigation of the issue of liability in such situations where the prior litigation was of such substantial consequence that it would have to be concluded that the defendant brought every possible resource to bear in defending the prior litigation. In *United States v. United Air Lines, Inc.*, 216 F Supp 709 (ED Wash, D Nev 1962), *aff'd* as to res judicata and mutuality *sub nom. United Air Lines, Inc. v. Wiener*, 335 F2d 379, 404 (9th Cir), *cert dismissed*, 379 US 951 (1964), the court allowed the survivors of passengers to assert that the issue of liability had already been decided against United Air Lines in

[4] Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine*, 9 Stan L Rev 281 (1957).

[5] *See also* Currie, *Civil Procedure: The Tempest Brews*, 53 Calif L Rev 25 (1965).

the previous trial of 24 consolidated cases which took fifteen weeks to try.[9] The court said:

"The rule of non-mutuality is not a general one but a limited one to be determined from the facts and circumstances in each case whether or not it should be applied.

"* * * * *

"It would be a travesty upon that concept [collateral estoppel] to now require these plaintiffs who are survivors of passengers for hire on the United Air Lines plane to again re-litigate the issue of liability after it has been so thoroughly and consumately litigated in the trial court in the 24 consolidated cases tried at Los Angeles * * *." 216 F Supp 709 at 726-28.

The multiple claimant anomaly is another example of a situation in which unfairness may result from the unrestrained application of collateral estoppel. Here, too, depending upon the circumstances, it should not be applied where unfairness results; however, such a determination has nothing to do with mutuality.

It is also suggested that the abandonment of mutuality will stultify the adoption and use of procedural devices such as class actions, joinder, counter claims, declaratory relief, consolidation, and intervention, all of which control the multiplicity of litigation without the vices claimed to be attendant upon such abandonment.

"Although it may sometimes reduce the scope of contested issues in multiple litigation, the aban-

[9] *Also see* Zdanok v. Glidden Co., 327 F2d 944 (2d Cir), *cert denied*, 377 US 934 (1964), where the defendant was held estopped from litigating liability after the determination of a case involving 5 of 165 claims. The court held the first litigation was tried and taken all the way to the Supreme Court with the balance of the claims in mind.

donment of mutuality alone is a half-hearted step toward judicial economy. It may actually detract from what is certainly the most desirable end result, the adjudication in one law suit of all disputes concerning the rights and obligations of all persons who have a judicially recognized interest in the transaction giving rise to the litigation. This end cannot be achieved by application of principles of res judicata alone; substantial changes in concepts of joinder, intervention, and class actions are necessary * * *." Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 Colum L Rev 1457 at 1472 (1968).

It has been pointed out that if mutuality is abandoned, the use of such procedural devices will be resisted by multiple claimants whose claims arise from a common occurrence because they can be benefited but not harmed by a prior adjudication. They would have the best of both worlds. Semmel suggests that third parties not be allowed to take advantage of the results of prior litigation if it was practical for them, under the existent procedural rules, to join in and to have their claim adjudicated in the first litigation. Likewise, he would shed no tears for a party to the first litigation who procedurally could have required his subsequent opponent to litigate his claim at the time of the first trial and who did not do so. In cases where it is not procedurally possible to try both claims at the same time, he would allow the court, in accordance with the rule of *Bernhard,* to decide on a case-by-case basis whether it is fair to bar the party in the prior litigation from relitigating a relevant issue. We know of no procedural steps which could have been taken by any of the parties to have the present litigation tried with the original case.

Finally, the contention is made that the aban-

donment of mutuality would cause the unknown to be substituted for the known. Professor Semmel expresses the idea in this manner:

"* * * [T]he courts will have substantial difficulty in applying a particularistic, case-by-case test to determine when circumstances prevail which justify relieving a party from the effects of an adverse judgment in a prior law suit. And if the courts will have difficulty, what endless doubts confront the litigant in determining when to appeal or how much effort and expense to devote to a particular litigation." Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 Colum L Rev 1457 at 1471 (1968).

However, Professor Semmel has also suggested that the general policy against relitigation would indicate prima facie that the first judgment should be conclusive. We are inclined to agree with the New York Court of Appeals, which stated as follows in *Schwartz v. Public Administrator,* 24NY2d 65, 246 NE2d 725, 298 NYS2d 955 (1969):

"No one would contend that the doctrine of collateral estoppel should be applied rigidly. In *De Witt* (19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195, *supra*), however, we indicated that the burden rests on the defendant to show that collateral estoppel should not be applied because he did not have a full and fair opportunity (*supra* p.148, 278 N.Y.S.2d 601, 225 N.E.2d 199), just as the burden of showing that the issue was identical and necessarily decided rests upon the moving party. This apportionment of the burdens is both fair and necessary. Otherwise much of the value of collateral estoppel will be lost." 246 NE2d at 730.

It has been suggested that collateral estoppel, absent mutuality, should be available only against a party who had the initiative (was a plaintiff) in the

prior action and not against a party who did not have the initiative (was a defendant) in the prior action. Professor Currie expressed the idea thusly:

"* * * [T]here is a significant difference between the situation of a party who has lost a case after choosing the time and place for action, and that of a party who has lost a case in which he had no control over such factors. The basic premise of the *Bernhard* case is that a party should not be afforded a second opportunity to litigate an issue where he has had one full and fair opportunity to litigate it and has lost. But the opportunity of a defendant to litigate an issue is not necessarily complete and unfettered; it may be impaired by the plaintiff's strategic use of the initiative * * *." Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine*, 9 Stan L Rev 281 at 303 (1957).

Currie, though he initiated the idea, subsequently recanted after he found the courts willing to make a particularistic case-by-case examination of the prior litigation to see whether the party who was involved in that litigation had a full and fair opportunity to litigate the issue. He said as follows:

"* * * Ideally, the court in each case would examine the circumstances of the former action to determine whether there had or had not been such an opportunity [full and fair opportunity to litigate]; if there had, the judgment would be treated as conclusive. I was skeptical, however, as to the willingness of the courts to engage in such particularism, and as to the practicability of such a course. Therefore, though recognizing its artificiality, I suggested a rule-of-thumb limitation on the scope of the *Bernhard* doctrine: the plea would not be allowed by one not a party to prior litigation against one who lacked the initiative in that litigation because of the likelihood that, lacking the in-

itiative, he may have lacked a full and fair opportunity to present his case.

"* * * How often can an academic commentator rejoice when his proffered solutions of legal problems are rejected by the courts? I did rejoice. The decision, * * * promoted the policies favoring stability of judgments and expeditious trials, and no injustice was done. In my own defense, I can plead only that my rule of thumb was but a second choice; in an 'ideal' world the courts would make a detailed inquiry into the circumstances of the former judgment to determine the fairness of allowing the plea of collateral estoppel. But what I failed to recognize was that dedicated judges like Justice Traynor would never accept the easy course of generalization as a substitute for the ideal of justice in the individual case." Currie, *Civil Procedure: The Tempest Brews*, 53 Calif L Rev 25 at 28-9.

We believe the plaintiff-defendant distinction is not valid for present purposes. Certainly, there would be something radically wrong with our system of justice if we were required to start basing rules of law upon the proposition that defendants do not, on the average, have a fair opportunity to litigate relevant issues. As previously indicated, the presumption has to be the other way. The following are cases in which there was no mutuality and a party was prevented from relitigating an issue when he had been a defendant in the prior litigation. *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal2d 601, 375 P2d 439, 25 Cal Rptr 559 (1962); *Sanderson v. Balfour*, 109 NH 213, 247 A2d 185 (1968); *B. R. DeWitt, Inc. v. Hall*, 19 NY2d 141, 225 NE2d 195, 278 NYS2d 596 (1967); *Good Health Dairy Products Corp. v. Emery*, 275 NY 14, 9 NE2d 758, 112 ALR 401 (1937); *McCourt v. Algiers*, 4 Wis2d 607, 91 NW2d 194 (1958); *Zdanok v. Glidden Co.*, 327

F2d 944 (2d Cir), *cert denied,* 377 US 934 (1964); *Halvorsen v. Grain Dealers Mutual Insurance Company,* 210 F Supp 73 (WD Mich 1962); *United States v. United Air Lines, Inc.,* 216 F Supp 709 (ED Wash, D Nev 1962).

It has also been contended that collateral estoppel, absent mutuality, should be available only for defensive use (to defend against a cause of action), and not for offensive use (to establish a cause of action). The argument used is that such a distinction would prevent multiple claimants, whose claims arose from a common occurrence, from lying in wait seeking to get the benefit of a prior adjudication, and, therefore, it would do away with the multiple claimant anomaly. *See Spettigue v. Mahoney,* 8 Ariz App 281, 445 P2d 557, 562 (1968); *Adamson v. Hill,* 202 Kan 482, 449 P2d 536 (1969); *Mackris v. Murray,* 397 F2d 74 (6th Cir 1968).

This argument has been previously discussed. As pointed out, collateral estoppel should not be used in the multiple claimant anomaly situation when unfairness would result. Even when no unfairness would result to the party against whom the estoppel is asserted, it is probably poor judicial administration to allow the other party to assert the estoppel if such other party, under the procedural rules then in effect, could have had his claim adjudicated in the original litigation. There is no object, however, in barring all offensive use merely because unfairness, or poor judicial administration, would result in certain instances. The following statement from *O'Connor v. O'Leary,* 247 Cal App 2d 646, 56 Cal Rptr 1 (Dist Ct App 1967), expresses a logical view of the matter.

"We are of the opinion that application of the

doctrine of collateral estoppel, absent the element of mutuality, is not dependent upon whether it is asserted offensively or defensively, but upon whether, under the particular circumstances at hand, policy considerations restrict its use * * *." 247 Cal App 2d at 649-50.

The following are other cases in which offensive use of collateral estoppel, absent mutuality, was permitted: *B. R. DeWitt, Inc. v. Hall, supra; McCourt v. Algiers, supra; Zdanok v. Glidden Co., supra; Barbour v. Great Atl. & Pac. Tea Co.*, 143 F Supp 506 (ED Ill 1956); Maryland for the use of *Dickson v. Capitol Airlines, Inc.*, 267 F Supp 298 (D Md 1967); *Gorski v. Commercial Ins. Co.*, 206 F Supp 11 (ED Wis 1962). Except as part of the over-all picture in deciding whether to abandon the requirement of mutuality, the offensive-defensive distinction is academic here because the estoppel was used defensively in the present case.

■ From the foregoing, we conclude as follows: mutuality is not a relevant basis on which to determine the finality of litigation. However, many reasons revolving around other policy considerations militate against giving carte blanche permission to bar relitigation of issues previously decided to persons who were neither a party nor in privity with a party to the original litigation when subsequently litigating with one who was. Courts, therefore, should scrutinize with care any situation where collateral estoppel is asserted by a person who was neither a party nor in privity with a party to the first case, to make certain no unfairness will result to the prior litigant if the estoppel is applied. Where no unfairness would result, a party to the first litigation should be bound in subsequent litigation with third parties by issues necessarily decided in the original case. Because of the general policy

against relitigation and because it is presumed that all parties to a case have an equal opportunity to litigate an issue, prima facie the first judgment should be conclusive. The New York Court of Appeals' summary in *Schwartz v. Public Administrator*, 24 NY2d 65, 246 NE2d 725, 298 NYS2d 955 (1969), succinctly states its views, in which we concur, as follows:

> "Although we have not previously said so, it is now evident that New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel. \* \* \* New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." 246 NE2d at 728-29.[7]

■ None of the policy reasons which tend to militate against a fair opportunity to litigate an issue in the first case would seem to have particular application to the situation under consideration. Plaintiffs had a full, complete and fair opportunity in their case with Alcoa to litigate the question of whether they had

---

[7] To the same effect is the following language from Note, *Collateral Estoppel: Demise of Mutuality in Washington?* 44 Wash L Rev 449, 459 (1969):

"For these reasons, it is suggested that the courts take a case by case approach; that they look into the particular circumstances of each prior case before applying the doctrine of collateral estoppel. Such an approach would yield the best of both worlds: on the one hand, it would serve the public policy in minimizing repetitious litigation, while on the other hand, it would assure that equity has been done by examining each case to be certain the litigation is in fact repetitious. This, of course, would have nothing to do with mutuality which should be completely rejected; it would instead be an effort to pragmatically salvage those situations in which the requirement of mutuality somehow led to the right result."

performed their contract with defendants. Plaintiffs do not contend otherwise. They contend only that defendants cannot take advantage of the outcome of the prior litigation because defendants were neither parties nor in privity with a party to that litigation. Under such circumstances, relitigation is a luxury that the efficient administration of justice cannot tolerate.

This conclusion is necessarily a refutation of the following language in *Wolff v. Du Puis*, 233 Or 317, 378 P2d 707 (1963):

> "As a matter of abstract public policy, and, indeed, of common sense, there is much to be said for the proposition that one trial is enough. Assuming the desirability of combining the two cases in one trial, before one jury, the solution lies in a joinder procedure, rather than in collateral estoppel. Joinder would insure the right of each party to protect his own interest. That matter, however, is one for the legislature. For this court to attempt to reduce litigation by creating an exception to the law of collateral estoppel would tend to make the remedy worse than the disease. There would still be two trials in many cases, one of which might be justly characterized as unfairly prejudged." 233 Or at 323.

We now believe the refer-to-the-legislature argument to be inappropriate in the area of collateral estoppel. The rule is court made and has evolved and been changed by courts over a period of time. Courts created the requirement of mutuality and then created many exceptions to it. Some courts have abandoned the mutuality principle entirely.

Whether the "remedy [is] worse than the disease" remains to be seen. Certainly, in this case, the application of collateral estoppel prevented substantial re-

litigation. It decided the case. Plaintiffs were parties to the first litigation and had an adequate opportunity to "protect his [their] own interest." *Wolff v. Du Puis* and like cases are hereby overruled.

Because of our foregoing views upon the application of the doctrine of collateral estoppel to the factual situation in this case, it is unnecessary for us to consider defendants' cross-appeal.

The decree of the trial court is affirmed.

McALLISTER, J., dissenting.

In my opinion *Wolff v. Du Puis*, 233 Or 317, 378 P2d 707 (1963) was correctly decided and should control this case. I dissent.