Argued June 25, dismissed July 1, petition for rehearing denied,
former opinion withdrawn, affirmed September 21,
petition for review denied November 3, 1971

LENSKE, *Appellant, v.* SHOBE, Sheriff,
*Respondent.*

486 P2d 580
488 P2d 852

*Reuben Lenske,* Portland, argued the cause and filed the briefs *pro se* for appellant.

*George M. Joseph,* Portland, argued the cause for

respondent. On the brief were James L. Sutherland and Morrison & Bailey, Portland.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

PER CURIAM.

Plaintiff appeals from an adverse decision of the trial court in a claim and delivery proceeding which he brought against the sheriff of Clackamas County for the recovery of an automobile. In the course of oral argument before this court the plaintiff, appearing *pro se,* stated that since filing the action he had recovered possession of the automobile from the sheriff.

The appeal is therefore moot.

Appeal dismissed.

**ON PETITION FOR REHEARING**

*Reuben Lenske, in propria persona,* for the petition.

No appearance *contra.*

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

This is a claim and delivery action. It is the latest development in litigation stretching back over at least

seven years. To discuss the issues presented, we first briefly describe this background.

Plaintiff, an attorney, was convicted on April 22, 1964, in the United States District Court for the District of Oregon of federal income tax evasion. Because of this conviction, the Oregon Supreme Court suspended plaintiff from the practice of law pursuant to the rules of that Court. Thereafter, the Oregon State Bar initiated an original contempt proceeding in the Oregon Supreme Court alleging plaintiff had continued to practice law in violation of the suspension order. The Oregon Supreme Court held plaintiff in contempt, adjudged a $500 fine, and awarded costs to the Oregon State Bar in the amount of $764.40. *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 405 P2d 510, 407 P2d 250 (1965). The United States Supreme Court denied certiorari, 384 US 943, 86 S Ct 1460, 16 L Ed 2d 541 (1966), and rehearing, 384 US 1028, 86 S Ct 1920, 16 L Ed 2d 1047 (1966).

Plaintiff then went into the federal courts in an attempt to enjoin the enforcement of the Oregon Supreme Court's suspension and contempt orders. He lost in the District Court, *Lenske v. Sercombe,* 266 F Supp 609 (D Or 1967), and in the Court of Appeals, *Lenske v. Sercombe,* 401 F2d 520 (9th Cir 1968).

In the meantime, plaintiff's conviction for tax evasion was reversed on August 28, 1967. *Lenske v. United States,* 383 F2d 20 (9th Cir 1967). The Oregon Supreme Court promptly vacated its suspension order, and plaintiff was restored to good standing in the Oregon State Bar.

All of the above has now passed into the annals of past history, except for our Supreme Court's 1965

award of $764.40 costs to the Oregon State Bar and the $500 fine for contempt; that is still in the status of current events in that it is the subject of the instant case.

Pursuant to the mandate of the Supreme Court, judgment for costs in this amount was docketed in the Multnomah County Circuit Court. The judgment remaining unsatisfied, on May 8, 1969, a writ of execution issued from that court directing the sheriff of Clackamas County to seize sufficient property of the judgment debtor, i.e., plaintiff, to satisfy the judgment. In compliance with this writ, the sheriff seized an automobile belonging to plaintiff.

Plaintiff then initiated the instant claim and delivery action against the sheriff of Clackamas County seeking to regain possession of his automobile. After a trial on the merits, the circuit court entered judgment dismissing plaintiff's complaint with prejudice on May 6, 1970.

An appeal was duly perfected in this court. At oral argument, plaintiff, appearing *in propria persona*, stated that he had regained possession of the automobile in question. We therefore dismissed this appeal as moot. *Lenske v. Shobe,* 6 Or App 472, 486 P2d 580 (1971). Plaintiff's petition for rehearing now advises us that he was able to regain possession of his automobile only by filing a surety bond pursuant to ORS 23.440.[1] Therefore, we withdraw our former

---

[1] ORS 23.440:

"When the sheriff levies upon personal property by virtue of an execution, he may permit the judgment debtor to retain the same, or any part thereof, in his possession until the day of sale, upon the defendant executing a written undertaking to the sheriff, with sufficient surety, in double the value of such property, to the effect that it shall be delivered to the

opinion, and dispose of plaintiff's contentions on their merits.

■ Plaintiff first complains that the trial court erred in failing to order the automobile in question returned to him pending a decision in that court. Assuming without deciding that this issue is reviewable,[2] we find no error.

Plaintiff was not entitled to return of the automobile because he never filed a delivery bond as required by ORS 29.840.[3] Although plaintiff tendered

sheriff at the time and place of sale; and for nondelivery thereof an action may be maintained upon such undertaking by the sheriff or the plaintiff in the execution; but the sheriff shall not thereby be discharged from his liability to the plaintiff for such property."

[2] The final decision of the trial court adverse to plaintiff would seem to moot the question of whether he was entitled to some provisional remedy (see ORS 29.010) pending decision.

[3] ORS 29.840:
"Upon the receipt of the affidavit [see ORS 29.820] and indorsement thereon, with a written undertaking executed by two or more sufficient sureties, approved by the sheriff, to the effect that they are bound in double the value of the property as stated in the affidavit, for the prosecution of the action, for the return of the property to the defendant, if return thereof is adjudged, and for the payment to him of such sum as may, for any cause, be recovered against the plaintiff, the sheriff shall forthwith take the property described in the affidavit, if it be in the possession of the defendant or his agent, and retain it in his custody. He shall also, without delay, serve on the defendant a copy of the affidavit, indorsement thereon, and undertaking, by delivering them to him personally, if he can be found, or to his agent from whose possession the property is taken; or, if neither can be found, by leaving them at the usual place of abode of either, with some person of suitable age and discretion; or, if neither have any known place of abode, by putting them in the post office, directed to the defendant at the post office nearest to him."

The record does not disclose why plaintiff consistently refused to comply with the bond requirements of ORS 29.840, but did, for other purposes, comply with the virtually identical bond requirements of ORS 23.440.

the sum of $1,000 into the trial court pending a decision, such was: (a) not in the form of a surety bond as required by the statute; and (b) not an amount totaling twice the value of the property seized, as required by the statute.

■ Plaintiff admits his non-compliance with the delivery bond requirements of ORS 29.840, but argues such bond requirements are a violation of due process. Although plaintiff cites no authority, we infer he is relying on *Sniadach v. Family Finance Corp.*, 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969). That case is inapplicable. *Sniadach* held that a hearing was required before there could be a pre-judgment wage garnishment. By contrast, the instant case involves a post-judgment execution; plaintiff has already had a hearing.

■■ The balance of plaintiff's assignments of error concern the trial court's decision on the merits. Plaintiff contends he was entitled to relief in his claim and delivery action because the underlying writ of execution was invalid[④] in that it was based on the Supreme Court's judgment for costs, and the Supreme Court lacks authority to assess costs in an original contempt proceeding. We are powerless to consider this argument under the doctrine of collateral estoppel. It is hornbook law that determinations on matters actually litigated in a prior action are conclusive and binding, at least on parties to the prior action, in

---

[④] We have assumed for present purposes that a claim and delivery action is available to attack a seizure pursuant to an invalid writ of execution. The statute is unclear on this, stating only that the required affidavit must show: "That the property has not been * * * seized under an execution or attachment against the property of the plaintiff * * * ." ORS 29.820. However, since this issue was not briefed by the parties, we express no view on it.

any subsequent action. *See generally,* James, Civil Procedure 575-584, §§ 11.18-11.22 (1965); cf. *Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970). Our examination of the full record of the Oregon Supreme Court's 1965 contempt proceeding involving plaintiff, introduced as an exhibit in this case, has revealed that this question concerning costs was actually litigated in that court at that time.⑥ Specifically, this very point was raised by plaintiff's "Objections to Statement of Costs and Disbursements" filed in the Oregon Supreme Court on November 22, 1965, and sustained in part and denied in part by that court on January 18, 1966. Plaintiff is bound by that prior determination.

■ Plaintiff alternatively argues that assuming the judgment for costs was valid, nevertheless it could be enforced only by writ of execution issued by the Supreme Court, whereas the instant writ issued from the Multnomah County Circuit Court. There is authority to the effect that the Supreme Court could have issued its own writ of execution. See *State v. Hodgin,* 76 Or 480, 146 P 86, 149 P 530 (1915). But that is not the only procedure available. Under ORS 1.160, "* * * any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes." By forwarding the judgment for costs to the Multnomah County Circuit Court to be docketed therein, and en-

---

⑥ Considerably greater collateral estoppel effect is given to factual determination than is given to legal determinations. Compare Restatement, Judgments 293-315, § 68 with 318-326, § 70 (1942). The Supreme Court's determination of costs is conclusive under either standard.

If instead, that earlier decision is regarded as a question of law to which collateral estoppel would not apply, then we are bound to follow that determination under the rule of *stare decisis.*

forced by the process of that court, the Supreme Court was adopting the procedures set out in ORS 9.540(3), governing the analogous area of Bar disciplinary proceedings. The procedure adopted was within the contemplation of ORS 1.160.

Finally, plaintiff attacks the underlying writ of execution by arguing the 1965 Oregon Supreme Court proceedings were invalid because they violated the criminal venue provisions of the United States and Oregon Constitutions. The actual contempt plaintiff was found to be guilty of at that time was committed in Marion County. *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 487-89, 405 P2d 510, 407 P2d 250 (1965), *cert denied* 384 US 943 (1966). Yet he was "tried" in Multnomah County in the sense that testimony was taken there before a referee appointed by the Supreme Court.

This point was also before the Supreme Court in 1965. It was raised by plaintiff's "Motion * * * To set aside Opinion * * *" filed November 22, 1965, and denied by the Supreme Court on December 29, 1965. Thus, everything said about collateral estoppel above applies equally to this point with the following qualification.

■ ■  Generally speaking, prior judgments can be collaterally attacked on the ground that the original court lacked jurisdiction. Thus, collateral estoppel is often less relevant to prior determinations on jurisdiction. But this general rule is subject to exceptions. As the United States Supreme Court has observed in a related context:

"* * * [W]hile it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitution-

ally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke,* 375 US 106, 111, 84 S Ct 242, 11 L Ed 2d 186 (1963).

Our examination of the record of the 1965 Supreme Court contempt proceeding discloses that the question of jurisdiction was fully and fairly litigated and finally decided at that time. Therefore, collateral estoppel applies equally to this determination, and the plaintiff is barred from now re-litigating it.

Petition for rehearing denied. Former opinion withdrawn.

Affirmed.