330 So.2d 826 (1976)
NEWPORT DIVISION, TENNECO CHEMICALS, INC., Appellant,
v.
Allie Mae THOMPSON and Buford Pogue, Appellees.
No. AA-50.
District Court of Appeal of Florida, First District.
April 23, 1976.
*827 Robert P. Gaines, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Lefferts L. Mabie, Jr., Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellees.
SMITH, Judge.
Tenneco appeals from partial summary judgments entered against it on liability in these pre-1972 survival actions by the administratrices of the estates of two men who died in a fire at Tenneco's plant. Sec. 46.021, F.S. 1971.[1] The administratrices, Allie Mae Thompson and Buford Pogue, are also the decedents' widows. They first obtained and collected judgments against Tenneco under the old wrongful death act, §§ 768.01-.02, F.S. 1971. Considering that the parties in the present survival actions were also parties to the earlier death actions, the trial court held that the prior judgments conclude the question of Tenneco's liability in the present cases.
The record does not demonstrate sufficiently for summary judgment purposes that the persons beneficially interested in the two estates were parties in interest in the prior death actions. Thompson was survived by an adult child or children. Pogue was survived by one or more children whose ages were not established. The record contains no evidence of whether the decedents left wills, although the designation of appellees as administratrices implies that they did not. For aught that appears, therefore, the parties beneficially interested in these survival actions are the heirs at law, including adult children in addition to the widows. Those adult children were in no sense parties to or beneficiaries of the prior death action judgments. Because the parties to the present actions are not in all respects the same as in the prior litigation, the conventional test for res judicata or estoppel by judgment is not satisfied by this record. Colonial Enterprises, Inc. v. Hill, 227 So.2d 481 (Fla. 1969). Contrast Epps v. Railway Expr. Agency, Inc., 40 So.2d 131 (Fla. 1949); Rehe v. Airport U-Drive, Inc., 63 So.2d 66 (Fla. 1953).
Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591 (Fla. 1956), relied on by appellees, involved the successive litigations of Mary Shearn, first her personal action as widow under the death act (and also as executrix suing under the survival statute) and then her personal action for her own injuries and automobile damage. The real party plaintiff in interest in the later action was therefore a party plaintiff to the earlier judgment. No such correlation has been shown in this case.
Appellees urge that we recede from the doctrine that there must be mutuality in collateral estoppel arising from a prior judgment. In terms of this case, that doctrine holds that prior judgments against Tenneco for the wrongful death of Thompson and Pogue do not now estop Tenneco to deny liability to the administratrices in these survival actions because those prior judgments, had they been instead for Tenneco, could not estop the survival claims in behalf of persons interested in the estates who were not parties to the death actions.
Bentham's criticism of the mutuality rule in 1827[2] and the California court's rejection of it in Bernhard v. Bank of America, 19 Cal.2d 807, 811-13, 122 P.2d 892, 894-95 (1942), have attracted recent converts to the idea that a party who has had a full and fair opportunity to litigate his rights *828 or liabilities against one adversary, and who has lost, should not ordinarily be granted further opportunities to litigate the same questions against other adversaries. There is no legitimate purpose, it is argued, in permitting Tenneco to avoid the prior adjudication of its responsibility for the death of Thompson and Pogue simply because some of the relatives now asserting Tenneco's liability were not present when it was previously established. See Bahler v. Fletcher, 257 Or. 1, 474 P.2d 329, 332 (1970).
The mutuality doctrine is but one application  in favor of the party who was present at the prior judgment, against one who wasn't  of the well-settled rule that there must be an "identity of persons and the parties to the action" for an estoppel to arise. Brundage v. O'Berry, 101 Fla. 320, 324, 134 So. 520, 522 (1931); Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956). The requirement of mutuality has been consistently honored in Florida, although with little discussion. Its silent influence dominated the Shearn case, for example, in which the only question was whether Orlando Funeral Home, Inc., should be permitted to relitigate the question of its responsibility for the collision in which William Shearn was killed and his wife injured. The District Court of Appeal, Fourth District, explicitly declined to abrogate the mutuality rule in Daigneau v. National Cash Register Co., 247 So.2d 465 (Fla.App.4th, 1971).
We also decline to abandon the doctrine. While we may doubt that mutuality serves commonly accepted policies undergirding the doctrine of judicial finality, see Bahler, supra, 474 P.2d at 332, and we are sorely tempted to grasp any remedy which promises a consolidation and expedition of litigation, yet we are persuaded that to abrogate the doctrine, in the absence of reformed procedure rules affecting joinder of parties, would lead to unjust and unpredictable impositions of estoppel. Greenebaum, In Defense of the Doctrine of Mutuality of Estoppel, 45 Ind.L.J. 1, 13 (1969).
REVERSED.
RAWLS, Acting C.J., and RUDD, JOHN A., Associate Judge, concur.
NOTES
[1] Because the deaths occurred in March and April 1971, these actions were unaffected by ch. 72-35, Fla.Laws, §§ 768.16 et seq., F.S. 1975.
[2] "There is reason for saying that a man shall not lose his cause in consequence of the verdict given in a former proceeding to which he was not a party; but there is no reason whatever for saying that he shall not lose his cause in consequence of the verdict in a proceeding to which he was a party, merely because his adversary was not... ." 3 Bentham, Rationale of Judicial Evidence 579 (1827), quoted in Bahler v. Fletcher, infra, 474 P.2d at 332-33.