ZEHMER, Judge.
Mark Dunmore, Sr., as personal representative of the estate of Mark Dunmore, Jr., deceased, sued Eagle F-B Truck Lines, Robert Pitts, and Pitts Trucking for the wrongful death of his son arising out of a motor vehicle accident. The trial court severed the trial of Dunmore’s cause of action against Robert Pitts and Pitts Trucking from the cause of action against Eagle, and the Pitts defendants paid the judgment entered against them on the jury verdict. Thereafter, the trial court granted Eagle’s motion for summary judgment on the severed cause of action against Eagle, and Dunmore appealed. We reverse because the payment of the Pitts judgment under the peculiar circumstances in this case did not discharge Eagle as a joint tortfeasor of its liability for damages to Dunmore.
Mark Dunmore, Jr., was fatally injured in June 1982 when he was struck by a semi-tractor truck while riding his bicycle. Mark Dunmore, Sr., as personal representative, filed a wrongful death action against Robert Pitts, the driver of the truck, and Pitts Trucking, the owner of the truck and employer of Robert Pitts. He also sued Eagle, who had leased the truck from Pitts. Count one of the complaint alleged a cause of action for negligent operation of the truck by Robert Pitts and sought to hold Pitts Trucking liable for his negligence on a theory of vicarious liability. Count two set forth a cause of action against Eagle for negligent entrustment of the vehicle to Pitts, alleging among other things that Pitts was not licensed by the appropriate government agencies and that Eagle knew or should have known by reason of his past driving record that Pitts was unfit to operate a motor vehicle.[1] The trial court denied a motion to dismiss this count. In defense, all defendants alleged that the plaintiff’s son was guilty of negligence that caused or contributed to causing the accident.
There was evidence that Robert Pitts had a bad driving record, and the Pitts defendants filed a motion in limine seeking to exclude all such evidence as irrelevant and *1263 inadmissible on the negligence charge. The Pitts defendants also filed a motion to sever their trial from the count against Eagle, arguing that admitting the driving record evidence to prove the negligent en-trustment claim against Eagle would unfairly prejudice their defense if made known to the jury. Dunmore opposed the motions, urging that the court could admit this evidence solely on the issue of Eagle’s liability and could prevent any unfair prejudice to the Pitts defendants by instructing the jury that the evidence was being admitted for a limited purpose and was not to be considered in determining the liability of the Pitts. At the hearing on these motions, Eagle also moved, ore tenus, for severance. The court entered an order granting both motions for severance, stating that Dunmore’s claim against Eagle would be tried following disposition of the claim against Robert Pitts and Pitts Trucking. In the Pitts trial, the jury rendered a verdict assessing plaintiff’s damages at $170,-000 and finding the Pitts defendants 60 percent negligent and the deceased son 40 percent negligent. The lower court entered judgment for $102,000 in accordance with the verdict and the Pitts defendants paid that judgment.
Upon payment and satisfaction of the Pitts judgment, Eagle moved for summary judgment on the grounds that the doctrines of collateral estoppel, res judicata, and satisfaction of judgment barred and discharged Dunmore’s claim against Eagle, a joint tortfeasor. The lower court granted summary judgment for Eagle on the specific ground that satisfaction of the judgment against Robert Pitts and Pitts Trucking foreclosed Dunmore’s right to prosecute his claim against Eagle. The court further stated that even if that were not the case, the doctrine of res judicata precluded Dun-more from relitigating the issue of damages. Additionally, the court noted that practical problems concerning the admissibility of evidence of Robert Pitts’s driving record would have arisen had the negligent entrustment count against Eagle been tried with the counts against Pitts and Pitts Trucking, referring to Clooney v. Geeting, 352 So.2d 1216 (Fla. 2d DCA 1977).
We hold that the lower court erred in entering summary judgment for Eagle on any of the stated legal theories. The pleadings do not charge and the record does not establish a relationship between Eagle and the Pitts defendants showing the requisite privity or identity of persons or capacity, or that the liability of Eagle is in the same right or derivative of the Pitts defendants. Rather, the record establishes that the Pitts’s relationship is more properly characterized as that of independent contractor. Thus, neither res judicata nor collateral estoppel supports the entry of summary judgment because neither doctrine applies in the absence of privity, identity of persons, or liability in the same right. E.g. Colonial Enterprises, Inc. v. Hill, 227 So.2d 481 (Fla.1969); Demoya v. Lorenzo, 468 So.2d 358 (Fla. 3d DCA 1985); Newport Division, Tenneco Chemicals, Inc. v. Thompson, 330 So.2d 826 (Fla. 1st DCA 1976). See generally 32 Fla.Jur.2d Judgments and Decrees § 148 (1981).
Nor can the summary judgment be sustained on the general proposition that the satisfaction of a judgment against one joint tortfeasor «operates to discharge the liability of the other joint tortfeasor. Under the circumstances in this case the jury verdict and judgment against the Pitts defendants did not determine and thus did not satisfy Eagle’s potential liability for damages to the plaintiff, and the record contains no indication that the parties intended the Pitts judgment to operate as a full release of Eagle’s liability. Count two of the complaint alleged a cause of action against Eagle for negligent entrustment, which is a separate tort from the cause of action for negligent operation of the truck and vicarious liability alleged against the Pitts defendants. Under the circumstances of this case, it is clear that the negligent entrustment theory imposed additional liability on Eagle not available to plaintiff against Eagle under any other alleged le *1264 gal theory. See Clooney v. Geeting, 352 So.2d 1216. Even though the measure of Dunmore’s damages in this wrongful death action was the same in the actions against Eagle and the Pitts defendants, the defendants’ allegations of the deceased son’s comparative negligence as defenses to the separate causes of action created issues of fact for the jury as to the respective degree or percentage of fault on the part of the decedent vis-a-vis Eagle and the decedent vis-a-vis the Pitts defendants. Had the two counts been tried together it would have been the jury’s function to assess the amount of plaintiff’s damages and then assess the comparative responsibility of the decedent vis-a-vis all the respective defendants so as to total 100 percent. Hoffman v. Jones, 280 So.2d 431 (Fla.1973). For example, the jury could have found the decedent 25 percent negligent, the Pitts defendants 35 percent negligent, and Eagle 40 percent negligent, allowing Dunmore to recover 75 percent of the amount of damages assessed. The severance of the two counts for trial prevented the normal operation of the comparative negligence doctrine, however, and resulted in a jury verdict finding decedent 40 percent negligent and the Pitts defendants 60 percent negligent, thereby limiting Dunmore’s recovery from the Pitts defendants "to 60 percent of the assessed damages. Since that jury did not consider any evidence of Eagle’s fault in reaching that verdict and did not determine the relative fault of Eagle vis-a-vis the decedent, the amount of damages for which Eagle may be responsible remains open for further determination by a jury. To illustrate, if Robert Pitts’s prior driving record is sufficiently egregious that the jury should find under the negligent en-trustment theory that Eagle should be held far more at fault than the deceased bicycle rider, i.e., substantially more than the 60 percent fault assessed against the Pitts defendants, Eagle would be liable for more damages to Dunmore than were the Pitts defendants under their judgment. It necessarily follows that the Pitts trial and judgment could not and has not determined all issues of liability and damages remaining between Eagle and Dunmore.
Rarely, if ever, should a trial court order separate trials in a comparative negligence case involving multiple tortfeasors, especially when they are not all charged in the same right and capacity and may be liable for different proportions of the assessed damages, as in the instant case. This is so because the jury is thereby precluded from making a fair assessment of the comparative fault of the several parties, as the Supreme Court of West Virginia has cogently explained:
Complications arise when apportionment involves multiple parties. Where, for example, the automobiles of two negligent drivers collide and injure the plaintiff, who is a bystander or a passenger in one of the cars, it is obvious that no complete and substantial justice can be done to the situation by any division of the damages between the plaintiff and one driver alone, in an action to which only those two are parties. There remain the problems of evaluation of the contributing fault of one who is not a party to the action, of the second suit against him in which the first is not res adjudicata and a new jury may come to a very different conclusion, and finally of contribution between the joint tortfeasors. The only completely satisfactory method of dealing with the situation is to bring all of the parties into court in a single action, to determine the damages sustained by each, and to require that each bear a proportion of the total loss according to his fault.
Bowman v. Barnes, 168 W.Va. 111, 282 S.E.2d 613, 618 (1981) (quoting Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 503-4 (1953).[2]
The case now before us exemplifies the problems that can and do result from or *1265 dering separate trials of joint tortfeasors in a comparative negligence case. There was no compelling need for severance in the first place, as any potential prejudice resulting from the admission of Robert Pitts’s bad driving record could have been averted in a joint trial by admitting the evidence for a limited purpose with appropriate instructions to the jury regarding its use against the Pitts defendants. § 90.107, Fla.Stat. (1987). While this potential prejudice to the Pitts defendants could have been so averted, in the present posture of the ease there is no way that Dunmore and Eagle can obtain a relative evaluation of the decedent’s negligence in comparison to that of each tortfeasor in a common trial. Rather, the jury will now be limited to assessing the relative fault of Eagle vis-a-vis the decedent without allocating any percentage of fault to the Pitts defendants, just as no fault was allowed to be allocated to Eagle in the Pitts trial. We recognize that both the plaintiff and Eagle may be treated unfairly by the submission of the issues to the jury in this manner; but Eagle insisted on the severance from the Pitts defendants, and Dunmore did not appeal the order of severance after final judgment in the Pitts case, so both will now have to live with their respective decisions in this regard.
The principle that the satisfaction of a judgment against one tortfeasor operates as a matter of law to release all other joint tortfeasors applies only where the joint tortfeasors are liable for the same damages and such damages are considered inseparable. Roberts v. Rockwell International Corp., 462 So.2d 502, 505 (Fla. 2d DCA 1984). In the case before us, even though the measure of Dunmore’s damages for the wrongful death of his son is the same under the causes of action for negligent operation of the vehicle and for negligent entrustment, the extent of Eagle’s liability for such damages is not the same as the other defendants due to the effect of the comparative negligence defense raised by all defendants. For this reason, we find the decisions in the Roberts case, as well as Walker v. U-Haul Company, Inc., 300 So.2d 289 (Fla. 4th DCA 1974), cert. denied 314 So.2d 588 (Fla.1975), and Gordon v. Phoenix Insurance Company, 242 So.2d 485 (Fla. 1st DCA 1970), cited by Eagle, are materially different and distinguishable. In each the amount of damages assessed in the judgment was the same as that which could be recovered against the other tort-feasors. None of these cases addressed the unique situation presented here, that is, where the amount of damages to be recovered by the plaintiff was dependent on the relative fault of the remaining tortfeasor and could exceed the amount recovered in the judgment. Since the Pitts judgment could not and did not satisfy all of Eagle’s potential liability for damages to the plaintiff, satisfaction of that judgment can operate only as a partial satisfaction of the damages for which Eagle may become liable under the principle that the plaintiff cannot enjoy a double recovery of the same damages from joint tortfeasors.
Furthermore, there is authority for the proposition that the satisfaction of a judgment does not operate as a release of all where the plaintiff intends to limit the effect of such satisfaction and does not intend to release all other joint tortfeasors, and such intention is apparent from the facts and circumstances. See generally, 47 Am.Jur.2d Judgments §§ 989, 992 (1969). Cf. Talcott v. Central Bank and Trust Co., 247 So.2d 727 (Fla. 3d DCA 1971), cert. denied, 262 So.2d 658 (Fla.1972). Here, it is perfectly plain from the manner in which Eagle was severed from the Pitts trial that Dunmore did not desire *1266 nor intend to proceed against the Pitts defendants alone and treat a judgment against them as a full satisfaction of Eagle’s liability for damages. The court ordered a severance of the counts for trial at the request of Eagle and Pitts over Dun-more’s objections. The order of severance was granted in express contemplation that the trial against Eagle would be held after the Pitts trial. Nothing in the motions for severance, the arguments of the parties before the trial judge, the comments of the trial judge, or the order itself indicated that the trial of damages against Pitts would be controlling on the damages issues against Eagle. If we were to accept Eagle’s argument in this case and apply the common law rule so as to fully release Eagle from all potential liability for damages to Dun-more, we would necessarily have to approve an improper use of the severance rule that would deprive Dunmore of the right and opportunity to have a jury consider Eagle’s negligence in determining the relative fault of the decedent and the defendants and the percentage by which the decedent’s fault should diminish the damages assessed. Such a result would not accord with even rudimentary concepts of justice and fair play.
Under Florida law, the doctrine of collateral estoppel arising from a prior judgment is not applicable in the absence of mutuality, that is, that both parties are mutually bound by the determination. E.g. Newport Division, Tenneco Chemicals, Inc. v. Thompson, 330 So.2d 826. Here, Eagle is clearly not bound by the judgment Dun-more obtained against the Pitts defendants, so it follows that neither party is bound by the adjudications of liability or damages in the Pitts trial.
The summary judgment for Eagle is reversed. This cause is remanded for a plenary trial on all issues of liability and damages between appellant and appellee.
REVERSED and REMANDED.
SMITH and BARFIELD, JJ., concur.

. Pitts Trucking stipulated that it was an independent contractor who periodically provided Eagle with trucks and drivers.

. See also, Bowman v. Barnes, 282 S.E.2d at 618 n. 7, which states,
Any attempt to compare percentage shares of total joinder situations with those made in separate suits is admittedly suspect. In addi *1265 tion, jury findings made in total joinder cases represent only an approximation of fault relationships. It is clear, however, that failure to consider negligence of all tortfeasors in a single suit will almost certainly result in incorrect and often inequitable allocations under comparative negligence. Because the non-joinder of a potential party affects and may prejudice the rights of all other parties in any lawsuit, the presence of all possible parties is essential for a fair resolution of claims in a comparative negligence action.
(emphasis added) (quoting Comment, Multiple Party Litigation in Comparative Negligence: Incomplete Resolution of Joinder and Settlement Problems, 32 S.W.L.J. 669, 679 (1978).